1             UNITED STATES COURT OF APPEALS
                FOR THE THIRD CIRCUIT
2
3      THE ALBERT BRANSON MARIS COURTROOM (19TH FLOOR)
4
5   MARK S. WALLACE, as       )  No. 15-3320
    Chapter 7 Trustee for the )
6   Bankruptcy Estate of      )
    Performance Transportation )
7   Services Inc., on behalf  )
    of the estate and all     )
8   others similarly situated, )
    et al.                    )
9                             )
    vs.                       )
10                            )  DATE:  June 7, 2016
    EATON CORPORATION; DAIMLER )
11  TRUCKS NORTH AMERICA LLC;  )
    FREIGHTLINER LLC; NAVISTAR )
12  INTERNATIONAL CORPORATION; )
    INTERNATIONAL TRUCK AND   )
13  ENGINE CORPORATION, et al. ) 10:08 a.m.-11:32 a.m.
    -------------------------------------------------
14
15
                         APPEAL
16        BEFORE THE HONORABLE MICHAEL A. CHAGARES,
        HONORABLE CHERYL ANN KRAUSE, AND HONORABLE ANTHONY
17                   JOSEPH SCIRICA
                UNITED STATES CIRCUIT JUDGES
18
19
20
21
22
23
24
25

1    APPEARANCES:

2    For Appellants:              EMMY L. LEVENS, ESQ.
                                  COHEN MILSTEIN
3                                 1100 New York Avenue, N.W.
                                  West Tower, Suite 500
4                                 Washington, DC 20005

5    For Appellees:              PRATIK A. SHAH, ESQ.
                                  AKIN GUMP STRAUSS HAUER &
6                                 FELD
                                  1333 New Hampshire Avenue,
7                                 N.W., Suite 400
                                  Washington, DC 20036

8

     ESR Operator:               UNKNOWN
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23          Veritext National Court Reporting Company
                         Mid-Atlantic Region
24              1801 Market Street – Suite 1800
                       Philadelphia, PA 19103
25                       1-888-777-6690

Page 3

1                    P R O C E E D I N G S

2        1            JUDGE CHAGARES:  The next case is

3    Wallach versus Eaton Corporation, No. 15-3320.

4        (Pause)

5                    JUDGE CHAGARES:  Good morning.  Are you

6    going to be reserving any time?

7                    MS. LEVENS:  If I could I'd reserve

8    five minutes.

9                    JUDGE CHAGARES:  That's granted.

10                    MS. LEVENS:  Thank you.

11                    THE CHAGARES:  So what's wrong with the

12    gratuitous assignment?

13                    MS. LEVENS:  There is nothing wrong

14    with the gratuitous assignment, Your Honor.

15                    The essence of this case is about two

16    businesses' ability to assign an asset.  The

17    Restatement of Contracts --

18                    JUDGE SCIRICA:  How do we get to the

19    Restatement in this case?

20                    MS. LEVENS:  You get to the Restatement

21    because the federal common law governs the validity of

22    the assignment in this case.  This court has yet to

23    determine what the federal common law requires with

24    regard to an assignment.

25                    So in determining what the federal

1    common law should be this court's starting place is

2    the second Restatement of Contracts.

3                    JUDGE KRAUSE:  What's the basis for

4    that?  I mean federal courts can't be simply

5    abdicating to the ALI.  What constitutes federal

6    common law for the federal courts?

7                    MS. LEVENS:  This is correct, Your

8    Honor; however, this court's own precedent in Nyugen

9    and several other federal courts all turn to the

10   Restatement as a representation of the majority

11   opinion across the country.

12                   The federal common law is a reflection

13   of the general common law in this country.  It's

14   evolved over hundreds of years.  And the purpose of

15   the Restatement was to survey the law across the

16   country and distill that into the majority approach

17   here.

18                   JUDGE KRAUSE:  In Nyugen we simply

19   observe that the Restatements were in line with

20   federal common law, we didn't say that the

21   Restatements were the source of federal common law,

22   which I take to be your argument.

23                   MS. LEVENS:  It's not necessarily the

24   source, it's the starting place for determining what

25   the federal common law should be.  And that is just

1   one of many examples within this court and courts

2   across the country, including the Supreme Court of the

3   United States.

4             JUDGE KRAUSE:  Well if the Restatement

5   is simply a starting place then where do we go with

6   the rest of the analysis and what's wrong with the

7   suggestion that has been taken by your colleagues on

8   the other side of the aisle to make the next step

9   looking at a 50 state survey, particularly where the

10  Restatement at issue is many decades old?

11            MS. LEVENS:  The Restatement is the

12  starting place and then this court would look as to

13  whether the Restatement's position is in line with the

14  important federal goals of the statutory scheme at

15  issue.

16            Here in Gulfstream this court held that

17  an express antitrust assignment was enforceable.  In

18  reaching that conclusion this court noted that in

19  asset transfers oftentimes there was a general

20  assignment, and courts didn't want to be getting into

21  a case by case analysis as to whether the assignment

22  included antitrust claims.  So the court adopted a

23  general rule in order not to get into the intricate

24  questions of the direct purchaser analysis.

25            Similarly the Restatement's approach

Page 6

1    here, which holds all gratuitous written assignments

2    enforceable, is a bright line, straightforward

3    analysis.  It obviates the need for lower courts to be

4    getting into a case by case analysis about the

5    sufficiency or existence of consideration, which would

6    turn antitrust cases into contract disputes as you've

7    seen in this case.

8                    JUDGE SCIRICA:  And if we do look at

9    the Restatement is 332 the right section that we look

10   to or are there other sections that are more specific

11   or more applicable?

12                    MS. LEVENS:  332 would be the most

13   specific section in the Restatement.

14                    Indeed the District Court agreed that

15   the Restatement was the appropriate starting point,

16   the District Court simply relied on the wrong section.

17   The District Court turned to the general provision

18   related to contracts instead of the more specific

19   provision related to assignments.

20                    Moreover, even if the court were to

21   adopt the defendant/appellees' approach and do a 50

22   state survey, the majority of courts actually do not

23   require consideration for a valid assignment.

24                    JUDGE KRAUSE:  If we're going to look

25   to 332 as the most specific why wouldn't we also take

Page 7

1    its specific admonition that it doesn't relate to the

2    transfer of non-contractual rights?

3               MS. LEVENS:  That is a holdover from

4    previous courts.  I mean this court even directed the

5    parties to look at a provision from the first

6    Restatement, which actually required consideration for

7    assignments for collection.  That law has evolved as

8    recognized by Corbin on Contracts which explicitly

9    noted that there was quite a bit of argumentation

10    between courts for quite some time but that the

11    dispute had been resolved and that gift assignments

12    were enforceable and there was no defense of the

13    obligor that the consideration was not for

14    consideration.  That the assignment was not for

15    consideration, excuse me.

16               JUDGE CHAGARES:  Well in Gulfstream we

17    state, and I'm going to have to read the quote, "We

18    believe that any exception to the direct purchaser

19    rule be inappropriate in this case."  And if we're

20    concerned with creating exceptions to the direct

21    purchase rule, why would we adopt a rule that you

22    suggest that would make it -- assignments of claims

23    from direct purchasers to indirect purchasers more

24    easily accomplished?

25               MS. LEVENS:  Later on Gulfstream also

Page 8

1  noted, "There would be nothing to prevent a direct

2  purchaser from expressly assigning its antitrust

3  claims to a remote purchaser."

4          The concern in Gulfstream was about

5  whether or not there was a clear and express

6  assignment of the antitrust claims.  In that case the

7  court was concerned that in a general assignment there

8  might be factual inquiries about whether or not the

9  purchase price included the assignment.  It was

10  unclear and they didn't want lower courts getting into

11  that factual dispute.

12          Notably Gulfstream actually rejected an

13  attempt by defendants in an antitrust suit to wield a

14  contractual argument to undermine the plaintiff's

15  direct purchaser standing due to an assignment.

16          JUDGE KRAUSE:  Well we did look for the

17  intention of the parties to be manifest, but weren't

18  we also looking to some of the other policy

19  rationales, the goals that you've said we would be

20  guided by beyond simply the Restatement in the third

21  goal of Illinois Brick?

22          And that is, if we want to see an

23  incentive for people to actually prosecute claims

24  don't you have a better indication of that if there

25  actually has been consideration, if someone is

Page 9

1   actually invested in moving forward and with enforcing

2   the claim?

3               MS. LEVENS:  Not necessarily, Your

4   Honor.  In fact the best indication of an incentive to

5   prosecute the action is what occurred in this case.

6   Tauro received an antitrust assignment and vigorously

7   litigated this case for five years.

8               The record testimony here shows clearly

9   that the assignor, R&R Trucking, intended to convey

10  its claim and had no intention whatsoever of pursuing

11  the antitrust claims here.

12              So in fact requiring consideration

13  would undermine the abilities of the parties who are

14  truly invested in pursuing the cases from bringing

15  those claims.

16              JUDGE KRAUSE:  Can we go back, you made

17  reference to the first Restatement and we had asked

18  the parties to look at that earlier section.

19              What do we take from the fact that it

20  is omitted from the second Restatement but it also is

21  not expressly repudiated?

22              Is there any guidance in terms of the

23  rules of the ALI or any other approach that you see in

24  case law to suggest how we should interpret that?  Is

25  that something supportive or adverse to your position

1   or is it simply inconclusive?

2               MS. LEVENS:  I would argue that it is

3   inapposite.  The -- that provision was not included in

4   the second Restatement for a very straightforward

5   reason.

6               If you look at Section 2 of Section

7   547, which the court directed the parties to, it

8   relates specifically to a certain kind of assignment,

9   an assignment for collection.  In that type assignment

10  entities assign their claims to one organization

11  oftentimes a trade association and in exchange for

12  that assignment they receive their portion of the

13  ultimate judgment.

14              For some time courts rejected

15  assignments for collection.  That is clearly no longer

16  the rule.  In fact even the Supreme Court in Sprint, a

17  case cited in appellants' reply brief, clearly holds

18  that assignments for collection are acceptable.

19              So the restrictions on such assignments

20  in the first Restatement are no longer valid, which is

21  why the second Restatement, which is merely a

22  reflection of the majority opinion across the country,

23  does not include that distinction.

24              JUDGE SCIRICA:  And for choses in

25  action, is the majority rule that gratuitous

1  assignment is appropriate in those circumstances?

2              MS. LEVENS:  Yes, Your Honor.

3              Turning very briefly to the issue of

4  the motions to intervene.  This is a straightforward

5  situation of legal error.

6              The District Court failed to enforce

7  this court's precedent, Community Bank --

8              JUDGE SCIRICA:  Well our standard

9  review is abuse of discretion, right?

10             MS. LEVENS:  Yes, but it is an abuse of

11  discretion for the lower court to apply the wrong

12  standard.

13             Here the lower court did apply the

14  wrong standard in failing to afford the proposed

15  intervenors a presumption of timeliness for their

16  motion to intervene.

17             JUDGE SCIRICA:  But isn't that case --

18  is that really such a good case for you?  I mean the

19  facts were significantly different in terms of class

20  certification and notice and so forth.  Is that your

21  main case that you're relying on here?

22             MS. LEVENS:  Community Bank is the

23  strongest case for the fact that the District Court

24  committed a legal error.  And what's important in

25  Community Bank are not the facts surrounding the

1    motions for intervention, but the policy rationales

2    underlying this court's adoption of the rule.

3              In Community Bank this court relied on

4    the Supreme Court's analysis in American Pipe, which

5    ruled that in determining rules that related to Rule

6    23 courts should be guided in trying -- in not trying

7    to incentivize absent class members from filing

8    duplicative and inefficient filings such as motions to

9    intervene.  That is the exact reason why the Supreme

10   Court tolled putative class members' actions until

11   such a time as they receive notice.

12             I see that I'm out of time.

13             JUDGE CHAGARES:  Yeah.  It's all right.

14             JUDGE SCIRICA:  Yeah.  May I just

15   follow up on that?

16             MS. LEVENS:  Of course, Your Honor.

17             JUDGE SCIRICA:  Let's assume that at

18   least I had some problems with that argument, tell me

19   why under the totality of the circumstances and all

20   the other factors that we look at, you know, why there

21   was an mistake here, even an abuse of discretion?

22             MS. LEVENS:  Even setting aside the

23   legal error, the court abused its discretion in

24   analyzing the timeliness factors here.  The strongest

25   reason for this is that the court inexplicably held

Page 13

1   absent class members to be on notice that defendants

2   intended to challenge the adequacy of class

3   representatives from questions that defendants had

4   propounded in interrogatories that these absent class

5   members didn't even have access to.

6                    JUDGE SCIRICA:  This was in October and

7   November 2014?

8                    MS. LEVENS:  The interrogatories were

9   propounded in August of 2015, in October or November

10  there were depositions of the assignor and assignee in

11  this case, which absent class members also did not

12  have access to.

13                   Even assuming absent class members

14  could read between the lines and determine that those

15  questions suggested that there were legal problems

16  with the putative class representatives, absent class

17  members did not have access to those materials, which

18  is why Community Bank and American Pipe hold that

19  absent class members have no duties whatsoever to the

20  litigation until they receive notice.

21                   JUDGE SCIRICA:  And then --

22                   JUDGE CHAGARES:  Let me just ask you --

23                   JUDGE SCIRICA:  I'm sorry.

24                   JUDGE CHAGARES:  Go ahead.

25                   JUDGE SCIRICA:  And the notice was the

Page 14

1  filing of the motion?

2           MS. LEVENS:  We would argue that

3  proposed intervenors were actually ahead of the game

4  because class notice had not been distributed to the

5  class.

6           JUDGE SCIRICA:  No but the motion --

7  excuse me -- just the -- a motion was filed in January

8  or February, no?

9           MS. LEVENS:  In January the

10 defendant/appellees submitted a letter to the court

11 requesting leave to move to dismiss the action for

12 lack of standing due to the assignment issue.

13          JUDGE CHAGARES:  If you don't prevail

14 can you file another -- your other clients, Toledo and

15 JJRS, file another lawsuit?

16          MS. LEVENS:  Absolutely.  Under

17 American Pipe their causes of actions are tolled, but

18 that would require relitigating five years of issues.

19 This is the exact reason why the presumption applies.

20          JUDGE KRAUSE:  But a presumption also I

21 suggest that it can be rebutted.

22          MS. LEVENS:  Yes, Your Honor.

23          JUDGE KRAUSE:  And I assume you would

24 agree in the abstract at least that notice to parties

25 of a need to intervene and protect their interest is

1    one means to rebut.

2              MS. LEVENS:  Correct, Your Honor.

3              JUDGE KRAUSE:  What do we make of the

4    fact here that intervenors and Tauro appear to be

5    represented by the same counsel?  Why can't we infer

6    from that that this is part of the coordinated and

7    thoughtful strategic decision about who to bring in

8    when and that could have been done at an earlier time?

9              MS. LEVENS:  It's not appropriate to

10   impute counsel's knowledge to the proposed intervenors

11   until the point at which proposed intervenors retained

12   counsel, which was not until 2015, otherwise proposed

13   intervenors absent class members would have every

14   incentive to get separate counsel who had no knowledge

15   or involvement in the case and then would have to get

16   completely up to speed.

17              Here the most efficient course for

18   absent class members who are concerned that their

19   rights might be affected by the case is to retain

20   class counsel.  However, if the mere act of retaining

21   class counsel would render their motion for

22   intervention untimely, that would be a very

23   inefficient result.

24              JUDGE KRAUSE:  There's no argument made

25   about the point in time in which Wallach came out of

1    the case as a class representative.  Is that something

2    that informs the reasonableness of intervenors'

3    timing?

4                    MS. LEVENS:  No, Wallach's exit from

5    the case is unrelated to the intervention issues here.

6    Wallach, after significant discovery and an analysis

7    of the overcharge damages, it was determined that one

8    defendants -- the purchasers of one defendant did not

9    suffer an overcharge.  Because Wallach had purchased

10   from that defendant it no longer had an actionable

11   claim.  So that issue is unrelated to whether or not

12   there was an adequate class representative, Tauro, to

13   bring this action.

14                    And indeed the fact that there's such

15   dispute about whether or not the assignment is

16   enforceable makes it even less reasonable to hold

17   absent class members on notice that the District Court

18   would adopt a minority position, invalidate the

19   assignment, and dismiss the class representative Tauro

20   in this action.

21                    JUDGE KRAUSE:  Counsel --

22                    JUDGE CHAGARES:  Are you --

23                    JUDGE KRAUSE:  Go ahead.

24                    JUDGE CHAGARES:  I was going to move

25   onto the --

Page 17

```
 1                    JUDGE KRAUSE:  Standing?  Yes.
 2                    JUDGE CHAGARES:  Could you address --
 3       the court sent you a letter about --
 4                    MS. LEVENS:  Uh-huh.
 5                    JUDGE CHAGARES:  -- jurisdictional
 6       versus statutory standing.
 7                    MS. LEVENS:  Yes.
 8                    JUDGE CHAGARES:  Could you give us your
 9       position briefly on that?  Is this a statutory
10       standing case, and if so, did the lower court err?
11                    MS. LEVENS:  This is a statutory
12       standing case.  While the procedure that led up to the
13       court's ruling is a little bit irregular, the
14       defendants requested leave to file a 12(b)(1) motion
15       challenging Tauro's statutory standing and the court
16       for efficiency purposes requested that defendants
17       brief that issue within the context of class
18       certification briefing.  But it's very clear in the
19       court's order that she was dismissing Tauro for
20       failure to have direct purchaser standing.
21                    It is undisputed by any of the parties
22       that Tauro is an indirect purchaser here and thus
23       suffered an injury for Article III purposes.
24                    The only question is whether or not it
25       is a direct purchaser under Illinois Brick and could
```

1   sue for damages under the Sherman Act.

2            JUDGE CHAGARES:  So your position is

3   the District Court erred in treating this issue as one

4   of jurisdictional standing.

5            MS. LEVENS:  If you look at the court's

6   language closely it appears that the court dismissed

7   under 12(b)(1) for statutory standing, and then

8   because there was no plaintiff to pursue the action

9   the court recognized that there was no case in

10   controversy alive and used the language that there was

11   no Article III case in controversy.  But we believe

12   that the District Court dismissed the case under

13   12(b)(1) statutory standing.

14            JUDGE CHAGARES:  Okay.  Anything more?

15            JUDGE KRAUSE:  Well if it was a

16   statutory standing issue didn't that need to be raised

17   under 12(b)(6) the first time around in 2011?

18            MS. LEVENS:  No, parties can raise

19   12(b)(1) or 12(b)(6) statutory standings at any --

20   statutory standing arguments at any point, and in fact

21   the District Court could have raised it sua sponte.

22            This is a situation in which their --

23   on the face of the complaint Tauro had statutory

24   standing because it alleged that it had an assignment

25   of -- from a direct purchaser.  The defendants

Page 19

1  disputed as a factual matter that after factual

2  discovery proceeded that the assignment was invalid

3  for lack of consideration, therefore it required

4  discovery in order for the parties to get there.

5            JUDGE CHAGARES:  Okay.  Thank you.

6  We'll hear you on rebuttal.

7            MS. LEVENS:  Thank you.

8            MR. SHAH:  May it please the court.

9  Pratik Shah for defendant-appellees.

10            Restatement Section 332 does not save

11  the antitrust assignment at issue, for which the

12  consideration offered in exchange is wholly illusory.

13            Now there's two reasons for that.  One,

14  the Restatement itself expressly disavows in section

15  316(a) and comment (a) expressly disavows

16  applicability to legal claims.

17            But even beyond that, and I think this

18  is the critical point, that the assignment at issue

19  was not executed as a gift, and therefore even if

20  Section 332 were otherwise applicable, it falls

21  outside the coverage of Section 332 which only covers

22  certain gratuitous assignments.

23            JUDGE CHAGARES:  It's kind of a curious

24  argument, Counsel, because on the one hand -- I mean

25  can it be any -- if it's not supported by

Page 20

1    consideration what else could it be besides a gift?

2              MR. SHAH:  Well, Your Honor, I think

3    there's two different categories.  You have regular

4    contracts.  Now, this is all assuming that the

5    Restatement applies and 332 applies.  You have regular

6    assignment contracts, which the vast majority of have

7    consideration, those are by regular contract rules.

8    You evaluate it, if there is consideration it's a

9    valid contract --

10             JUDGE CHAGARES:  I assume that's not

11   the case here.

12             MR. SHAH:  Right.  Okay.  The other

13   category is from the start it is intended to be a

14   gift; it is a gratuitous assignment, right?  And

15   nobody here has ever contended that this assignment

16   from the start was intended to be a gift.  You can

17   look at JA-137, the actual assignment agreement, on

18   its face it says this assignment is in exchange for

19   mutual covenants and other consideration.

20             Plaintiffs have never argued at any

21   point in this case that this was intended to be a

22   gift, that this was a gratuitous assignment.  Their

23   argument is that the consideration was cited on the

24   face of the assignment was adequate.

25             So you have two boxes.  What you can't

Page 21

```
 1    say is that this was a regular contractual assignment,
 2    but because it turns out that the consideration was
 3    defective, it suddenly defaults into a gift
 4    assignment.  It would turn contract law on its head.
 5                  If you and I enter into a contract and
 6    it turns out that the consideration is defective, that
 7    doesn't mean it just becomes a gift.  It means you go
 8    back to the status quo.
 9                  JUDGE CHAGARES:  But isn't it clear
10    that something is being given?  I mean why can't we
11    just assume it's a gift then?
12                  MR. SHAH:  Well because, Your Honor, on
13    the face of it, and if you turn to it, JA-137.
14                  JUDGE CHAGARES:  We have it right here,
15    yeah.
16                  MR. SHAH:  Okay.  JA-137 here's what it
17    says is:
18                  "Agreement.  Now, therefore, in
19            consideration of the mutual covenants
20            contained in this agreement and for other
21            consideration, the parties agree as
22            follows."
23                  So you can't just rely --
24                  JUDGE CHAGARES:  But then paragraph 1
25    is very specific about what's being given.  I mean I
```

1  might turn to my left here and give Judge Scirica my

2  glasses, I might expect them back, but yet paragraph 1

3  here is pretty clear, it's permanent.

4              MR. SHAH:  Sure, Your Honor, but if

5  there is a contract for consideration, if you and I

6  enter into a contract for a car; in exchange for the

7  car I'm going to excuse a debt that you owe me.  Now

8  it turns out that my mom paid the debt already.  Now

9  it doesn't mean -- that means there was actually no

10  valid consideration for that contract because the debt

11  had already been extinguished.  That doesn't mean you

12  get to keep the car and it's a gift, I meant to give

13  it to you as a gift.

14              That's exactly the situation here.

15  There was no intention to give a gift, it was supposed

16  to be an exchange for consideration.  Now it turns out

17  that the consideration is defective.

18              There is no case -- no case that they

19  cite and no case that we found where a regular

20  contract intended for consideration, because the

21  consideration is defective, becomes a gift.  Nor would

22  any rule make any sense.

23              We've looked pretty hard, we've cited

24  the cases on 23, which are exactly -- on page 23 of

25  our brief -- which are exactly on point: you have an

1  assignment for consideration, defendant argues there's

2  a lack of consideration, and the plaintiff comes in

3  and says, oh, wait, but then it defaults to a

4  gratuitous assignment.  Every court that we found has

5  rejected that argument for the common sense rule is

6  that a gift -- that a contract doesn't become a gift

7  because the consideration has failed.

8                    JUDGE CHAGARES:  But here --

9                    MR. SHAH:  They don't cite a single

10  case to the contrary.

11                   JUDGE CHAGARES:  Our Gulfstream case, I

12  don't have a citation for you -- but really focused on

13  the clarity of the -- whatever it is, the giving, the

14  words about the giving.

15                   MR. SHAH:  Sure.

16                   JUDGE CHAGARES:  That seemed to be the

17  focus, not so much if consideration or anything else.

18                   MR. SHAH:  Your Honor, that is true,

19  but that's because the issue in Gulfstream was whether

20  the antitrust assignment has to be express or not.

21  That is, whether the scope of the agreement of what

22  you're giving is clear.  And there it makes perfect

23  sense that if it's express then it's clear that what

24  you're giving.  But here the question is

25  consideration.  And under normal contract law, under

1  normal assignment law, you need consideration.

2              Now even if you apply that narrow

3  exception in Section 332 for gratuitous assignment, it

4  still has to be a gratuitous assignment.  And if you

5  look at 332 itself, Your Honor, the definition of a

6  gratuitous assignment is in Section 332(5), and it

7  says, "Assignment is gratuitous unless it is given or

8  taken in exchange for performance a return promise

9  that would be consideration."

10             JUDGE KRAUSE:  How is the rule that

11 you're espousing consistent with a uniform consisting

12 with predictable federal common law?  Because part of

13 the arguments that we had between the parties is that

14 there was consideration and you dispute that it was

15 efficient.  Things like goodwill or proceeding to go

16 forward with the enforcement.

17             If what we end up relying on is a post

18 hac examination of the sufficiency of that

19 consideration to determine whether something is

20 gratuitous or not and then which Restatement provision

21 applies, and if it's enforceable, that seems like a

22 180 from the kind of consistency and predictability

23 that we want as people are considering their

24 assignments and the investment that needs to be made

25 to promulgate that third goal, that is the enforcement

Page 25

1   of assignment rights as we've described in our case

2   law in Illinois Brick.

3               MR. SHAH:  Sure, Your Honor.  So a

4   couple responses.

5               First, I don't think the inquiry that

6   we're positing here would be all that complicated,

7   because in order to avail yourself of 332(5) -- to say

8   it's a gratuitous assignment -- that you can see from

9   the face of the assignment itself: is it intended as a

10   gift, as the definition in 332(5) itself says.

11               That inquiry here there is no dispute

12   about amongst the parties.  Everyone agrees that on

13   the face of this exchange they have never argued this

14   was intended to be a gift.  They've always argued that

15   it's meant to be for consideration.

16               The dispute is over whether the

17   consideration was defective or not.  But the question

18   about whether it's a gift assignment or not can be

19   easily resolved by the court.

20               Now to be sure, Your Honor, there may

21   be cases where there are disputes and a court has to

22   weigh in.  But the court has never suggested that

23   whenever a plaintiff comes in with an assignment, it

24   could be written on a piece of paper that's entirely

25   fraudulent, but the court simply accepts it because it

1   doesn't want to get into subsidiary questions of

2   whether -- about the validity of the assignment.

3            In Gulfstream this court adjudicated

4   such a claim.  There could be all sorts of claims

5   where plaintiffs come in with an assignment and of

6   course it would be circular for the court simply to

7   just accept whatever assignment it is, but that cannot

8   be the rule and that's why federal courts have done

9   this.

10            Now whether every single rule has to be

11   one of federal common law or whether you look to state

12   law, that could be a difficult question.  In this case

13   it doesn't matter because you come out the same way

14   either way.

15            JUDGE KRAUSE:  But we're not dealing

16   here with a disagreement between the assignor and

17   assignee as to what their intent was.  It's very clear

18   and here the assignee has proceeded to vigorously

19   enforce the claim.  This is a third-party challenge to

20   statutory standing.

21            Why does it matter under those

22   circumstances whether or not there's consideration if

23   we're to be guided by, starting as a baseline, the

24   Restatement, which seems to contemplate that there can

25   be gratuitous assignments, and then we look at the

 1   federal policies that are outlined in Illinois Brick,

 2   which as long as there is clear manifestation of the

 3   parties' intent in the writing would seem to be

 4   satisfied by a gratuitous assignment?

 5                  MR. SHAH:  Okay.  Well a couple

 6   responses, Your Honor.

 7                  First, it will almost never be the case

 8   where the defendant in an antitrust case or in any

 9   other case is actually the assignor.  And yet there

10   are lots of cases out there where courts adjudicate

11   questions about the assignment even though the

12   assignor is not present.  That's just the nature of

13   these claims.  When it's assignment of a legal claim

14   the defendant is almost never -- for obvious reasons

15   -- is not going to be an assignor, and yet there's a

16   lot of body of case law where courts are adjudicating

17   these sorts of assignment questions.

18                  Now as to the Illinois Brick portion of

19   your question, we think actually the antitrust -- this

20   would turn the purposes of Illinois Brick on its head.

21   And that's because you would have a rule, if you

22   accept plaintiffs' rule, where as a matter of federal

23   common law that this assignment, even though it --

24   doesn't meet the terms of a gratuitous assignment, nor

25   is there consideration somehow valid, so that the

Page 28

1    indirect purchaser here, Tauro, can bring the claims.

2    And yet under Ohio law, which follows a more

3    traditional rule, in that case the R&R, the assignor,

4    could bring actual claims under Ohio antitrust law as

5    a direct purchaser because the assignment would be

6    invalid under Ohio law.

7              So you would have the risk of multiple

8    liability of defendants, one plaintiff proceeding

9    under Ohio law, one plaintiff proceeding under federal

10   law -- the risk of multiple liability, tough damages

11   questions.  The very sorts of concerns that Illinois

12   Brick was concerned about.

13             Rather if you have the rule, the normal

14   default rule that says you need consideration unless

15   it's a gift, you would have uniformity between federal

16   and state law.  There would be one direct purchaser,

17   that's R&R in a case like this, that could bring both

18   claims or not bring any claims at all.

19             So we think actually the purposes of

20   antitrust law are better served by our rule, which is

21   the traditional rule.

22             JUDGE KRAUSE:  Why doesn't that

23   argument cut equally the other way?  I mean that is if

24   we're requiring assignment and there are states --

25   requiring consideration, there are states that don't,

1    you just end up with the opposite parties be able to

2    go but still having duplicative litigation.

3                    MR. SHAH:  Sure.  Well, Your Honor, a

4    couple of responses.

5                    One is the court could choose as a

6    matter of federal common law simply to adopt the state

7    rule.

8                    Now here since the state rule is the

9    rule that maps onto the federal law rule that's being

10   -- that we're advocating, it's the same result.

11                   The other response I would give to you

12   here is that as our charts show -- and I understand

13   they have a competing chart -- the majority state law

14   rule is the rule that we advocate.

15                   If you look at their chart, not a

16   single case involves an antitrust assignment there.

17   Every case involving antitrust assignments are cited

18   on pages 17 and 18 of our briefs.  All of those at

19   least assume the existence of consideration, and

20   that's for good reason.  Normally people don't gift --

21   make gifts of antitrust claims.  And if they do, then

22   it actually has to meet the definition of a gratuitous

23   antitrust assignment.

24                   Now if there's any uncertainty about

25   the scope of the definition of antitrust assignment

1  under 332 Section 5, comment (h) of Section 332 I

2  think decisively resolves it in our favor.  Here is

3  what comment (h) says:  It actually speaks exactly to

4  the circumstance where parties enter into an

5  assignment for -- ostensibly for consideration, turns

6  out the consideration is really not valid, and yet

7  that's not a gratuitous assignment.  Here's what it

8  says:

9           "Moreover, an assignment as security

10          for or in total of partial satisfaction of a

11          preexisting obligation is not gratuitous

12          whether or not there's consideration under

13          Section 73."

14          And then skipping to the next sentence.

15          "Such an assignment is not gratuitous

16          even if the preexisting obligation is

17          unenforceable."

18          So if you -- they speak to this exact

19  circumstance where you have an exchange that's

20  intended to be in consideration, turns out

21  consideration not really valid consideration under the

22  Restatement.  That is still not a gratuitous

23  assignment, because under the definition in 332(5), a

24  gratuitous assignment is one that has to be intended

25  as a gift, not just one that it happens to fail a

1  consideration and you say that --.

2         JUDGE CHAGARES:  So your rule is if

3  it's not supported by valid consideration and it's not

4  a gratuitous assignment it's just unenforceable.

5         MR. SHAH:  That's right.  I think our

6  primary submission would be there is no such thing as

7  a gratuitous antitrust assignment.  It's never been

8  recognized.  Again, every antitrust case that's been

9  cited to you assumes consideration.  They don't cite a

10  single case in their chart where you have a gratuitous

11  antitrust assignment.

12         But what I'm saying, maybe the most

13  straightforward way for this court to decide doesn't

14  have to wade into that issue.  It can even assume the

15  theoretical possibility of a gratuitous antitrust

16  assignment, whether that's under federal common law or

17  state law, it can assume that.  It can posit that, but

18  the fact that the assignment at issue undisputedly

19  contemplated consideration takes it outside the scope

20  of that exception.

21         So, in other words, an assignment does

22  not just become gratuitous just because the intended

23  consideration fails.

24         JUDGE CHAGARES:  Can you also deal with

25  jurisdictional versus statutory standing --

Page 32

1          MR. SHAH:  Sure.

2          JUDGE CHAGARES:  -- and the

3   intervention argument?

4          MR. SHAH:  Sure, Your Honor.

5          So in this case the standing objection

6   actually is jurisdictional, and here's the reason why.

7   Tauro in its complaint, and this is at JA-70 complaint

8   paragraph 18, it posits only one basis of injury-in-

9   fact.  That exclusive basis of injury-in-fact is the

10  assignment it received from R&R for its direct

11  purchases of the vehicles.

12          If that assignment is in fact defective

13  or not valid, their sole basis for positing an injury-

14  in-fact has disappeared and therefore they don't have

15  standing.

16          To put it a different way:  It's as if

17  R&R had assigned their claim to either you or me.  If

18  it turns out that that assignment is invalid, there is

19  no injury-in-fact and therefore it's an Article III

20  defect.

21          And just to point you to that language

22  in JA-87 complaint paragraph 18, and obviously you're

23  able to read its yourselves, but just to point it to

24  you.  It says:

25          "Plaintiffs, Tauro Brothers

1           Trucking Company is the assignee of certain

2           claims from R&R, which during the class

3           period purchased class eight transmissions

4           and trucks containing class eight

5           transmissions, including the class eight

6           linehaul transmissions, directly from

7           one or more defendants in the United States.

8                As a result of these ..." --

9           JUDGE CHAGARES:  We're giving you extra

10   time, so don't -- we're not going to cut you off right

11   now.

12           MR. SHAH:  Oh, okay.  And then it says,

13   and here's the sole assertion of injury-in-fact.

14           JUDGE CHAGARES:  Can you put two more

15   minutes on?  Thank you.

16           MR. SHAH:  "As a result of these

17   purchases, plaintiff sustained injury and was damaged

18   by reason of the antitrust violations alleged in this

19   complaint."

20                There is nothing in this complaint that

21   alleges injury in fact as indirect purchaser

22   overcharges.  Even if there were that would be a

23   separate claim and wouldn't lead to injury-in-fact as

24   to their direct purchaser claim.

25           JUDGE KRAUSE:  But doesn't the

1  complaint also identify them in their role as an

2  indirect purchaser in terms of their relationship to

3  the other parties here?

4          MR. SHAH:  It identifies their -- yes,

5  but it never alleged that they suffered overcharge as

6  a result.  There's no overcharge allegation of injury-

7  in-fact.  You have to have -- the only injury-in-fact

8  an indirect purchaser could do is if the overcharge is

9  passed on.  They don't allege that in their complaint.

10          The sole basis of injury they -- in

11  fact that they allege is in the paragraph where they

12  allege their injury-in-fact.

13          JUDGE KRAUSE:  Well perhaps some

14  explicit allegation is needed for statutory standing,

15  I'm not even sure of that, but when we're talking

16  about constitutional standing where the allegations of

17  the complaint give rise to the basis for a

18  constitutional injury why would we require it to be

19  made exclusive that standing is being premised on that

20  Article III injury?

21          MR. SHAH:  Well, Your Honor, because

22  they made explicit their basis for standing in

23  paragraph 18.  They identify the sole basis of their

24  injury in paragraph 18 and they say it's from the

25  assignment to R&R.

1            So we think in this case it is clear

2     that the District Court properly viewed it as an

3     Article III question.  Now we don't --

4                JUDGE KRAUSE:  But how would that

5     negate or supersede in some way the constitutional

6     standing that they have from just reading the face of

7     the complaint?

8                MR. SHAH:  There's nothing on the face

9     of the complaint, Your Honor, that alleges any other

10    injury-in-fact.

11               JUDGE KRAUSE:  Will you agree the fact

12    that they're an indirect purchaser and that that is

13    alleged, that is the relationship here in the -- even

14    the pyramid -- the marketplace that alone gives them

15    constitutional standing?

16               MR. SHAH:  No, Your Honor, absolutely

17    not.  As an indirect purchaser the only way you

18    suffered injury is if you have been passed on the

19    overcharge.  If you've actually been charged less or

20    the same price, you have not suffered any injury-in-

21    fact.

22               They have never alleged -- nowhere in

23    this complaint have they alleged they've actually been

24    overcharged as a pass through.  That is why they are

25    predicating their suit on the assignment.

1            Now, Your Honor, even if there were any

2    doubt about that, and I don't think there should be,

3    whether you want to characterize it as Article III or

4    statutory standing, what the District Court did and

5    the only place it actually talks about Article III

6    standing is in the conclusion of its opinion.  What it

7    says is, because there is no longer any plaintiff in

8    this case, there's no longer any named plaintiff in

9    this case, for that reason there is no longer any case

10   or controversy, and therefore I dismiss for Article

11   III.

12            That is true whether or not the

13   plaintiff is knocked out as a matter of Article III or

14   statutory standing.  The disposition by the District

15   Court is still correct.  The District Court cites this

16   court's Prudential case which says, you evaluate

17   whether there's a case of controversy based on named

18   parties.

19            The sole named party is out of the

20   case, therefore the District Court was eminently

21   correct in saying there is no case or controversy --

22   putting standing aside -- there's no case or

23   controversy because there's no plaintiff in this.  It

24   cites the Prudential case, which is exactly right.

25            If I can -- and I know I'm out of time

1 | -- if I could just address the intervention point?

2 | JUDGE SCIRICA:  I was going the ask you

3 | about the intervention.

4 | MR. SHAH:  Okay.

5 | JUDGE SCIRICA:  So you're on our time

6 | for a short period of time.

7 | MR. SHAH:  Thank you.  Okay.  So

8 | intervention.  A couple responses.

9 | First the legal presumption under

10 | Community Bank, that would be an unprecedented sea

11 | change in class cert law to say no matter what in any

12 | circumstance before an opt-out deadline has been set

13 | that there's a presumption of timeliness.

14 | Community Bank has very special

15 | circumstances in it and that's why the presumption

16 | should be limited to those special circumstances.

17 | That was a conditional class

18 | certification case where the court granted class

19 | certification expressly conditioning that grant on the

20 | ability of the class members to challenge the adequacy

21 | of class counsel.  It then left a two-month deadline

22 | from that point -- the opt-out deadline for folks to

23 | bring that challenge.  That's -- that is a very

24 | different situation where it's expressly --

25 | JUDGE SCIRICA:  Assuming we agree with

1  you on that.

2             MR. SHAH:  Okay.  Then they have no

3  legal error, then they are in abuse of -- pure abuse

4  of discretion --

5             JUDGE SCIRICA:  Well why isn't this an

6  abuse of discretion here?

7             MR. SHAH:  Well, Your Honor --

8             JUDGE SCIRICA:  I don't see where the

9  prejudice is, and I don't see that delay being

10  unreasonable --

11             MR. SHAH:  Okay.

12             JUDGE SCIRICA:  -- but maybe you can

13  convince me otherwise.

14             MR. SHAH:  Let me take those in turn.

15             First as to prejudice.  Both sides

16  agree that you would at least have to reopen discovery

17  to determine the suitability of the new class

18  representative.

19             JUDGE SCIRICA:  They said they weren't

20  going to take offensive discovery.

21             MR. SHAH:  I'm sorry, Your Honor?

22             JUDGE SCIRICA:  They said they were

23  going to limit discovery, they were not going to take

24  offensive discovery.

25             MR. SHAH:  They did, but the amount of

Page 39

```
 1   discovery that would have to happen as to suitability
 2   is not de minimis.
 3               Now they made these arguments to the
 4   District Court about the relative burden that the
 5   discovery and new briefing on class cert would impose
 6   on the parties.  At JA-18 and 19 the District Court
 7   heard both sides' arguments about how material of a
 8   burden it would be, how much discovery would actually
 9   need to occur on the ground.  The District Court
10   expressly considers it at JA page 18 and 19 and says,
11   no, these -- under the circumstances of this case,
12   given what's already transpired, these burdens are
13   actually material burdens, real prejudice.
14               JUDGE SCIRICA:  When was the trial
15   date?
16               MR. SHAH:  The trial date was still I
17   think a year away at the time of these motions.
18               JUDGE SCIRICA:  That's a lot of time.
19               MR. SHAH:  I'm not exactly sure about
20   that.
21               But the point is the District Court
22   here had been managing this proceeding, heard
23   precisely the argument on the magnitude of harms, and
24   made a finding that under the circumstances of this
25   case, what had already transpired and what was coming,
```

 1  that this would be material prejudice.  I don't see

 2  why this court would second guess as an abuse of

 3  discretion that considered determination.

 4              JUDGE SCIRICA:  Well because, you know,

 5  it's a pretty important decision that was made here,

 6  it ends the case.

 7              MR. SHAH:  Your Honor, I do, and the

 8  District Court --

 9              JUDGE KRAUSE:  And five years of

10  litigation discovery that have already been invested

11  in the case.

12              MR. SHAH:  Sure, Your Honor.  Well --

13              JUDGE CHAGARES:  And also we would face

14  the prospect of a filing of a new lawsuit.  Does that

15  make any sense?

16              MR. SHAH:  Well, Your Honor, there are

17  timeliness requirements when you intervene, and the

18  District Court has discretion to manage that docket.

19              Now if they follow through with their

20  threat to file a new lawsuit, it doesn't mean you

21  start from scratch.  The District Court -- district

22  courts have lots of tools to take into account the

23  discovery that would -- that already happened in this

24  suit.  Same experts, same record, all of that stuff.

25  They've offered already to proceed on that in this

1    case, there's no reason why the same agreement

2    couldn't be made if they filed a new lawsuit.

3              The fact that they can file a lawsuit

4    doesn't really bear -- a new lawsuit doesn't bear on

5    the analysis.  In fact it -- some courts say it cuts

6    the other way because it suggests they're not actually

7    being prejudiced to the extent that their claims will

8    be barred; they can still file a new lawsuit and

9    proceed.  And district courts have plenty of tools to

10   manage that sort of situation.

11             JUDGE KRAUSE:  If you'd be picking up

12   where you left off --

13             MR. SHAH:  Uh-huh.

14             JUDGE KRAUSE:  -- which I take it is

15   the import of the point you just made, why wouldn't we

16   save everyone, including the court, the burden of a

17   new lawsuit, particularly where we're talking about

18   intervenors who didn't have notice even of the

19   discovery request that you argue should have put them

20   on notice of the need to intervene earlier?

21             MR. SHAH:  Okay.  So Let me take the

22   first part of it, that is I don't think you have to

23   save the District Court from managing its docket.  I

24   mean the District Court is well positioned to decide.

25   I think there's serious questions whether a new suit

Page 42

1    will actually be filed.

2              As you saw in our briefs in the -- on

3    the exact same record class cert was denied

4    (indiscernible).  I think there's serious questions

5    there and the District Court I think is in a far

6    better place to assess that risk.

7              But, Your Honor, to the other part of

8    your question about whether they were on notice.  The

9    District Court made a more than reasonable finding

10   that because the same counsel represented both the

11   plaintiffs and the intervenors, that it could

12   reasonably impute the knowledge of plaintiffs' counsel

13   -- too there.

14             JUDGE KRAUSE:  But the record suggests

15   that they retained class counsel days before --

16             MR. SHAH:  Filing their --

17             JUDGE KRAUSE:  -- filing the motion to

18   intervene.

19             MR. SHAH:  A couple --

20             JUDGE KRAUSE:  How could we adopt as a

21   rule that the fact they had same counsel should be

22   imputed retroactively to discovery that was served on

23   a different party years earlier?

24             MR. SHAH:  A couple responses here,

25   Your Honor, and I think this is critical.

Page 43

1            It was intervenors' burden to show

2    timeliness.  This issue was litigated in briefs.  This

3    was fully briefed before the District Court.

4    Defendants' primary opposition to the intervention

5    motion was based on an imputation theory.  That is

6    because the same plaintiffs' counsel represented both,

7    plaintiffs' counsel obviously had notice of the

8    potential defects in standing as of both August and

9    November, therefore you can impute it to there under

10   Harris, the case cited in the District Court's

11   opinion, under Clark, the case cited in our brief.

12            In reply, they did not provide any

13   affidavit about the relationship between plaintiffs'

14   counsel and intervenors, no declaration, nor did they

15   even make any argument in their reply brief that

16   imputation would be improper because, for example,

17   they were newly retained, had no preexisting

18   relationship.  Nothing.

19            The only basis on which they argued,

20   and you can look at their pleading, it's their reply

21   brief, it says, well plaintiffs' counsel itself didn't

22   have any reason to know until the January 8th letter

23   or it would have been premature for them to file

24   earlier.

25            So the record in front of the District

Page 44

1  Court is the intervenors show up with the same

2  lawyers, defendants object that hey, look --

3              JUDGE CHAGARES:  Well are you disputing

4  the representation that they weren't retained by the

5  Toledo and JJRS until later in the game?

6              MR. SHAH:  No, Your Honor, I'm not

7  disputing that representation, but I would like to

8  make a couple points about that.

9              First of all, that wasn't in the record

10 and the District Court has to make inferences based

11 upon what's in the record in front of it.  The

12 District Court knows the parties, it knows the

13 counsel, it knows the relationship, made that

14 reasonable inference.

15             They didn't mention it below.  They

16 didn't mention it in their opening appeal brief here.

17 It first appears as an assertion in footnote 18 of

18 their reply brief on appeal.  And that footnote, while

19 I certainly have -- I would never question I'm sure

20 it's true -- it's carefully worded.  It says, "They

21 were retained weeks before they filed."  It doesn't

22 make any assertions, and this would have certainly

23 been a hotly disputed or certainly a source of

24 discussion in the District Court had it been raised.

25 It never mentions when they first had contact, when

Page 45

1    they first discussed the case.  A retention letter can

2    be signed at any point.

3                     And so if you look at the language of

4    their footnote 18, it says they were retained weeks

5    before.  And this is precisely why it wouldn't make

6    sense to penalize the defendants and to call an abuse

7    of discretion of the District Court who has these

8    papers before it, has the parties before it, knows

9    that imputation is the primary argument before it, no

10   affidavit, declaration, or even assertion about the

11   lack of preexisting relationship that they first make

12   here in footnote 18 of their reply brief.  How would

13   the District Court have known that?

14                     Instead the District Court made the

15   very reasonable inference that when you have

16   plaintiffs' counsel driving the litigation -- the

17   class litigation, showing up with intervenors at what

18   happens to be a very strategic time: the day that they

19   file their reply brief to the class cert motion, is

20   the same day they file their intervenors' motions.

21   All of those circumstances the District Court was left

22   with the very reasonable inference that this was not

23   something wholly new, that imputation would have been

24   appropriate.

25                     JUDGE KRAUSE:  Well in terms of the

Page 46

1   timing of at least the first intervenor why doesn't it

2   make sense to do that in connection with their

3   response given that the District Court postponed even

4   your briefing on the question of the statutory

5   standing or constitutional standing as the case may

6   be, until the motion for class certification briefing?

7             MR. SHAH:  Well, Your Honor, as the

8   District Court made abundantly clear they were on

9   notice -- that plaintiffs' counsel (indiscernible)

10  were at least on notice as of August and November.

11  The rule is that you have to intervene in a timely

12  fashion.

13             By waiting not only -- not in August,

14  not in November, not in January, but by waiting until

15  March 6th, the day that the class cert, the hearing

16  was scheduled for March 25th, less than three weeks

17  later.  There was no time for discovery into any of

18  these issues such as their preexisting relationship

19  with -- between the plaintiffs' counsel and the

20  intervenors, nor was there any reason for defendants

21  to seek that discovery given that they had never made

22  any representations that this was a brand new

23  relationship, they had never met each other, never

24  discussed these issues until weeks before.

25             And again --

Page 47

```
 1              JUDGE KRAUSE:  Are you suggesting that

 2   just advising the District Court that a party has an

 3   intention to file a motion to dismiss without briefing

 4   on that should be the basis for the clock to be

 5   running at that point other parties need to intervene?

 6              MR. SHAH:  Well the letter identifies

 7   the basis of the motion to dismiss.

 8              JUDGE KRAUSE:  But the District Court

 9   postponed briefing of that until the end of January.

10              MR. SHAH:  Sure, Your Honor, but that

11   wouldn't have precluded.  And certainly as the

12   District Court says, even before that it wouldn't have

13   precluded them from saying that if you have a

14   potential new party that wants to come in and step in

15   the shoes, there's a lot of things that has to happen.

16   There has to be discovery about their adequacy,

17   discovery about other things related to the propriety

18   of them being present in the suit.  None of that was

19   possible here because they waited until the same day

20   that they filed their class cert reply less than three

21   weeks before the hearing.

22              And the so, Your Honor, the District

23   Court took that into account.  It has -- it was in

24   front of these proceedings, had set the schedule,

25   knows what is the parties knew, and said, look, this
```

Page 48

```
 1    isn't proper.  And I don't think that that is an abuse
 2    of discretion by any means.  I think it's an eminently
 3    reasonable thing for the District Court to say.  Same
 4    counsel has been quarterbacking this all along, they
 5    should have known, if not when the interrogatories
 6    were posited on the validity of the assignment at
 7    least when the 30(b)(6) depositions squarely put them
 8    into contention by November, and certainly not waiting
 9    until March, less than three weeks before the hearing
10    to bring --
11              JUDGE KRAUSE:  What about the fact that
12    Wallach was still in the case in March?  I mean there
13    was another class representative until early March.
14              MR. SHAH:  Your Honor, even plaintiffs
15    don't rely on that, and I think that's for good
16    reason.  There were serious questions about Wallach
17    all along, and their own expert -- the reason why
18    Wallach is no longer a part of this case is their own
19    expert evidence, which had obviously been in the
20    making for a long time, showed that purchases -- and
21    this goes to your question about the indirect
22    purchasers, why can't we just assume that they were
23    injured -- it turns out that the evidence showed that
24    the purchasers of Daimler trucks actually received a
25    discount, the indirect purchasers, and they were not
```

1   injured in fact.  And so they excluded Wallach from

2   the definition there.  Even they don't rely on that.

3              JUDGE KRAUSE:  Why should we impute the

4   knowledge of those defects as to the second class

5   representative to these intervenors?

6              MR. SHAH:  Your Honor, I'm not imputing

7   anything as to the second one.  They have predicated

8   their intervention motions if you look at solely as

9   based upon -- they have never argued that oh, well we

10  didn't intervene because Wallach was still in the

11  case.  The fact that they haven't made that argument I

12  think is quite illuminating.  There's very good

13  reasons for that.  They don't want to go down that

14  road.  Wallach had plenty of concerns, he was a

15  trustee.

16              Here you have a plaintiff suit where

17  the only two plaintiffs, they don't actually have any

18  direct purchaser.  You have a trustee of a bankruptcy

19  estate and you have an assignee.  And so I think it

20  speaks to why -- there are different dynamics going on

21  in the case -- but it speaks to why we're not relying

22  on it.

23              JUDGE SCIRICA:  Thank you, Counsel.

24              MR. SHAH:  Thank you, Your Honors.

25              MS. LEVENS:  In rebuttal

Page 50

1   defendants/appellees have made this a simple case.   If

2   gratuitous assignments are enforceable as they agree

3   they are under the Restatement, then this assignment

4   is enforceable.   Because by definition an assignment

5   that is not for consideration is a gratuitous

6   assignment.

7             JUDGE KRAUSE:  But their point is that

8   it's different if it's intended to be for

9   consideration.

10            MS. LEVENS:  The cases on which

11  appellees rely for that proposition are really getting

12  down to the heart of whether or not the parties

13  intended to convey the assignment at all.

14            Oftentimes, and in fact it's the reason

15  why there's conflicting case law in this case,

16  consideration, the term consideration is oftentimes

17  used as a proxy for trying to understand whether or

18  not there was a meeting of the minds between the

19  assignee and the assignor, the promisee and the

20  promisor.

21            Here where an assignment is written and

22  expressed there is no question about the intent of the

23  parties.   The only question here is whether third

24  parties to the assignment can undermine and invalidate

25  the clear intent of the two parties to the assignment

Page 51

1   based on an extraneous requirement.

2              Notably this court had an occasion to

3   address Gulfstream's express assignment requirement in

4   Lerman.  In that case this court rejected an attempt

5   to use Gulfstream's language to require special terms

6   of art.  The court recognized that as a general rule

7   such special terms of art are not required to make an

8   assignment enforceable.

9              Consideration in general contracts or

10  even general assignments might be a necessary

11  requirement to determine and insure that the parties

12  intended to convey the instrument.  But whereas here

13  the assignment is express and written and there's

14  factual evidence that the parties intend to continue

15  with the assignment, there is no basis for requiring

16  consideration.

17             It's also noteworthy that if this court

18  were to adopt the minority position among the states

19  and require consideration, that third parties such as

20  appellees would not have standing to raise that

21  argument and invalidate the assignment, whereas here

22  both the assignor and the assignee agree that the

23  assignment should be enforced.

24             JUDGE CHAGARES:  How do you react to

25  your adversary's point about there's never been a

Page 52

1    decision that says -- that has basically approved a

2    gratuitous antitrust assignment?

3                    MS. LEVENS:  There's also never been a

4    decision that required consideration in an antitrust

5    assignment context.  The truth is, is there's just not

6    a lot of case law on this issue.  There are a handful

7    of cases, which appellees cite, in which antitrust

8    assignments were discussed and it happened to be that

9    in those cases consideration was present, and the

10   courts noted that.  But that does not mean that

11   consideration is required.  The better rule is that it

12   is not.

13                   However, if appellees believe that the

14   face of the assignment purports to convey

15   consideration, then we have no dispute here and the

16   assignment is enforceable.  Black letter law is that

17   courts do not question the sufficiency of

18   consideration.

19                   It's unquestioned that Tauro was under

20   no legal obligation to provide R&R with its best

21   efforts to minimize discovery.  And so while perhaps

22   R&R or even appellees think that that's not worth very

23   much, it's sufficient to qualify as consideration

24   rendering the assignment enforceable.

25                   Turning quickly to the issue of the

 1 | intervention.

 2 |        The determinative issue on intervention

 3 | is whether or not absent class members had any reason

 4 | to believe that their rights were in question.

 5 | Nothing was filed publicly indicating that defendants

 6 | intended to question the adequacy of the class

 7 | representatives in this case.  The mere fact that they

 8 | raised issues related to class representatives'

 9 | adequacy in discovery should not put absent class

10 | members on notice that they would need to intervene

11 | because in fact defendants do that in every single

12 | class action.

13 |        Defendants always understandably seek

14 | discovery about the adequacy of class representatives,

15 | whether it relates to their purchases, their

16 | assignments, or some other issue.

17 |        If that is sufficient to require absent

18 | class members to file a motion to intervene to

19 | preserve their rights then it will undermine, as

20 | American Pipe said, the very purpose of Rule 23, which

21 | was to minimize duplicative and inefficient filings.

22 |        JUDGE KRAUSE:  One could certainly

23 | imagine a situation where, you know, presumption would

24 | be rebutted where the parties are all represented for

25 | the entire period by the same counsel.

Page 54

1          What do we do with the fact that as has

2     been asserted by your colleague here, Mr. Shah, that

3     there's nothing in this District Court record on which

4     we also need to rely, that would indicate that counsel

5     was in fact retained and as you've represented in

6     briefing only days before the motions to intervene?

7          MS. LEVENS:  There is in the record the

8     argument that the proposed intervenors affirmatively

9     did not have notice of this issue until the January

10    filing by defendants.

11         JUDGE KRAUSE:  What is that?

12         MS. LEVENS:  It's in the motions to

13    intervene -- in both motions to intervene proposed

14    intervenors affirmatively state that they had no

15    reason to intervene until at least January.

16         In fact proposed intervenors go one

17    step further and say that they don't believe that

18    their intervention should be required because Tauro

19    has an assignment to pursue the case, but out of an

20    abundance of caution, because defendants had raised

21    the issue, they felt the need to intervene at that

22    time.

23         There's no evidence in the record other

24    than that statement that proposed intervenors had any

25    knowledge of the concerns the defendants had with the

Page 55

1    proposed class representatives.

2                    JUDGE KRAUSE:  And is the statement

3    that they had no reason to believe or they had no

4    notice that there had been a challenge to the standing

5    of other class representatives?

6                    MS. LEVENS:  I honestly don't remember

7    the exact wording.  But either way the same result

8    occurs.  They -- there's no reason for these specific

9    proposed intervenors or any of the absent class

10   members to know that defendants intended to raise this

11   argument until at least January, and really until they

12   affirmatively made the argument.  Not only would the

13   court but the proposed intervenors and the 2000 absent

14   class members in this case would all be significantly

15   prejudiced and inconvenienced if we had to redo this

16   case from the beginning, and there's no reason to do

17   so here.

18                    For that reason we ask that the court

19   reverse.  If there are no other questions.

20                    JUDGE CHAGARES:  Thank you, Counsel.

21                    MS. LEVENS:  Thank you so much.

22                    JUDGE CHAGARES:  Thank you, Counsel,

23   for the excellent arguments both written and oral.

24   You give us a lot to think about.  And I'd ask that

25   the parties order a transcript and split the cost, if

Page 56

1   you will.  We'll take the case under advisement.

2                   And Ms. Amato (ph), if we could go off

3   the record I'd like to greet Counsel at side bar like

4   we did in the last class.

5        (Proceedings concluded at 11:32 a.m.)

6                        * * * * * *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          CERTIFICATION

2

3              I, Dawn South, certify that the foregoing is

4       a correct transcript from the official electronic

5       sound recording of the proceedings in the above-

6       entitled matter.

7

8       Dated:  June 9, 2016

9

10

_____

11

Dawn South

12

        AAERT Certified Electronic Transcriber CET**D-408

13

14

15

16

17

18

19

20

21

22

23

24

25

| & | | |
|---|---|---|
| **&**  2:5 | | |

**1**

**1**  3:2 17:14 18:7,13 18:19 21:24 22:2
**1-888-777-6690**  2:25
**10:08**  1:13
**1100**  2:3
**11:32**  1:13 56:5
**12**  17:14 18:7,13,17 18:19,19
**1333**  2:6
**137**  20:17 21:13,16
**15-3320**  1:5 3:3
**17**  29:18
**18**  29:18 32:8,22 34:23,24 39:6,10 44:17 45:4,12
**180**  24:22
**1800**  2:24
**1801**  2:24
**19**  39:6,10
**19103**  2:24
**19th**  1:3

**2**

**2**  10:6
**2000**  55:13
**20005**  2:4
**20036**  2:7
**2011**  18:17
**2014**  13:7
**2015**  13:9 15:12
**2016**  1:10 57:8
**23**  12:6 22:24,24 53:20
**25th**  46:16

**3**

**30**  48:7
**316**  19:15
**332**  6:9,12,25 19:10 19:20,21 20:5 24:3 24:5,6 25:7,10 30:1 30:1,23

**4**

**400**  2:7
**408**  57:12

**5**

**5**  24:6 25:7,10 30:1 30:23
**50**  5:9 6:21
**500**  2:3
**547**  10:7

**6**

**6**  18:17,19 48:7
**6th**  46:15

**7**

**7**  1:5,10
**70**  32:7
**73**  30:13

**8**

**87**  32:22
**8th**  43:22

**9**

**9**  57:8

**a**

**a.m.**  1:13,13 56:5
**aaert**  57:12
**abdicating**  4:5
**abilities**  9:13
**ability**  3:16 37:20
**able**  29:1 32:23
**absent**  12:7 13:1,4 13:11,13,16,19 15:13,18 16:17 53:3 53:9,17 55:9,13
**absolutely**  14:16 35:16
**abstract**  14:24
**abundance**  54:20
**abundantly**  46:8
**abuse**  11:9,10 12:21 38:3,3,6 40:2 45:6 48:1
**abused**  12:23

**accept**  26:7 27:22
**acceptable**  10:18
**accepts**  25:25
**access**  13:5,12,17
**accomplished**  7:24
**account**  40:22 47:23
**act**  15:20 18:1
**action**  9:5 10:25 14:11 16:13,20 18:8 53:12
**actionable**  16:10
**actions**  12:10 14:17
**actual**  20:17 28:4
**address**  17:2 37:1 51:3
**adequacy**  13:2 37:20 47:16 53:6,9 53:14
**adequate**  16:12 20:24
**adjudicate**  27:10
**adjudicated**  26:3
**adjudicating**  27:16
**admonition**  7:1
**adopt**  6:21 7:21 16:18 29:6 42:20 51:18
**adopted**  5:22
**adoption**  12:2
**adversary's**  51:25
**adverse**  9:25
**advisement**  56:1
**advising**  47:2
**advocate**  29:14
**advocating**  29:10
**affidavit**  43:13 45:10
**affirmatively**  54:8 54:14 55:12
**afford**  11:14
**agree**  14:24 21:21 35:11 37:25 38:16 50:2 51:22
**agreed**  6:14

**agreement**  20:17 21:18,20 23:21 41:1
**agrees**  25:12
**ahead**  13:24 14:3 16:23
**aisle**  5:8
**akin**  2:5
**al**  1:8,13
**albert**  1:3
**ali**  4:5 9:23
**alive**  18:10
**allegation**  34:6,14
**allegations**  34:16
**allege**  34:9,11,12
**alleged**  18:24 33:18 34:5 35:13,22,23
**alleges**  33:21 35:9
**amato**  56:2
**america**  1:11
**american**  12:4 13:18 14:17 53:20
**amount**  38:25
**analysis**  5:6,21,24 6:3,4 12:4 16:6 41:5
**analyzing**  12:24
**ann**  1:16
**anthony**  1:16
**antitrust**  5:17,22 6:6 8:2,6,13 9:6,11 19:11 23:20 27:8,19 28:4,20 29:16,17,21 29:23,25 31:7,8,11 31:15 33:18 52:2,4 52:7
**appeal**  1:15 44:16 44:18
**appeals**  1:1
**appear**  15:4
**appearances**  2:1
**appears**  18:6 44:17
**appellants**  2:2 10:17
**appellees**  2:5 6:21 14:10 19:9 50:1,11 51:20 52:7,13,22

**applicability**  19:16
**applicable**  6:11
  19:20
**applies**  14:19 20:5,5
  24:21
**apply**  11:11,13 24:2
**approach**  4:16 5:25
  6:21 9:23
**appropriate**  6:15
  11:1 15:9 45:24
**approved**  52:1
**argue**  10:2 14:2
  41:19
**argued**  20:20 25:13
  25:14 43:19 49:9
**argues**  23:1
**argument**  4:22 8:14
  12:18 15:24 19:24
  20:23 23:5 28:23
  32:3 39:23 43:15
  45:9 49:11 51:21
  54:8 55:11,12
**argumentation**  7:9
**arguments**  18:20
  24:13 39:3,7 55:23
**art**  51:6,7
**article**  17:23 18:11
  32:19 34:20 35:3
  36:3,5,10,13
**aside**  12:22 36:22
**asked**  9:17
**asserted**  54:2
**assertion**  33:13
  44:17 45:10
**assertions**  44:22
**assess**  42:6
**asset**  3:16 5:19
**assign**  3:16 10:10
**assigned**  32:17
**assignee**  13:10
  26:17,18 33:1 49:19
  50:19 51:22
**assigning**  8:2
**assignment**  3:12,14
  3:22,24 5:17,20,21

6:23 7:14 8:6,7,9,15
  9:6 10:8,9,9,12 11:1
  14:12 16:15,19
  18:24 19:2,11,18
  20:6,14,15,17,18,22
  20:24 21:1,4 23:1,4
  23:20 24:1,3,4,6,7
  25:1,8,9,18,23 26:2
  26:5,7 27:4,11,13
  27:17,23,24 28:5,24
  29:16,23,25 30:5,7
  30:9,15,23,24 31:4
  31:7,11,16,18,21
  32:10,12,18 34:25
  35:25 48:6 50:3,4,6
  50:13,21,24,25 51:3
  51:8,13,15,21,23
  52:2,5,14,16,24
  54:19
**assignments**  6:1,19
  7:7,11,22 10:15,18
  10:19 19:22 24:24
  26:25 29:17 50:2
  51:10 52:8 53:16
**assignor**  9:9 13:10
  26:16 27:9,12,15
  28:3 50:19 51:22
**association**  10:11
**assume**  12:17 14:23
  20:10 21:11 29:19
  31:14,17 48:22
**assumes**  31:9
**assuming**  13:13
  20:4 37:25
**atlantic**  2:23
**attempt**  8:13 51:4
**august**  13:9 43:8
  46:10,13
**avail**  25:7
**avenue**  2:3,6

**b**

**b**  17:14 18:7,13,17
  18:19,19 48:7

**back**  9:16 21:8 22:2
**bank**  11:7,22,25
  12:3 13:18 37:10,14
**bankruptcy**  1:6
  49:18
**bar**  56:3
**barred**  41:8
**based**  36:17 43:5
  44:10 49:9 51:1
**baseline**  26:23
**basically**  52:1
**basis**  4:3 32:8,9,13
  34:10,17,22,23
  43:19 47:4,7 51:15
**bear**  41:4,4
**beginning**  55:16
**behalf**  1:7
**believe**  7:18 18:11
  52:13 53:4 54:17
  55:3
**best**  9:4 52:20
**better**  8:24 28:20
  42:6 52:11
**beyond**  8:20 19:17
**bit**  7:9 17:13
**black**  52:16
**body**  27:16
**boxes**  20:25
**brand**  46:22
**branson**  1:3
**brick**  8:21 17:25
  25:2 27:1,18,20
  28:12
**brief**  10:17 17:17
  22:25 43:11,15,21
  44:16,18 45:12,19
**briefed**  43:3
**briefing**  17:18 39:5
  46:4,6 47:3,9 54:6
**briefly**  11:3 17:9
**briefs**  29:18 42:2
  43:2
**bright**  6:2
**bring**  15:7 16:13
  28:1,4,17,18 37:23

**back**  48:10
**bringing**  9:14
**brothers**  32:25
**burden**  39:4,8 41:16
  43:1
**burdens**  39:12,13
**businesses**  3:16

**c**

**c**  3:1
**call**  45:6
**car**  22:6,7,12
**carefully**  44:20
**case**  3:2,15,19,22
  5:21,21 6:4,4,7 7:19
  8:6 9:5,7,24 10:17
  11:17,18,21,23
  13:11 15:15,19 16:1
  16:5 17:10,12 18:9
  18:11,12 20:11,21
  22:18,18,19 23:10
  23:11 25:1 26:12
  27:7,8,9,16 28:3,17
  29:16,17 31:8,10
  32:5 35:1 36:8,9,9
  36:16,17,20,21,22
  36:24 37:18 39:11
  39:25 40:6,11 41:1
  43:10,11 45:1 46:5
  48:12,18 49:11,21
  50:1,15,15 51:4
  52:6 53:7 54:19
  55:14,16 56:1
**cases**  6:6 9:14 22:24
  25:21 27:10 50:10
  52:7,9
**categories**  20:3
**category**  20:13
**causes**  14:17
**caution**  54:20
**cert**  37:11 39:5 42:3
  45:19 46:15 47:20
**certain**  10:8 19:22
  33:1

**certainly** 44:19,22 44:23 47:11 48:8 53:22
**certification** 11:20 17:18 37:18,19 46:6 57:1
**certified** 57:12
**certify** 57:3
**cet** 57:12
**chagares** 1:16 3:2,5 3:9,11 7:16 12:13 13:22,24 14:13 16:22,24 17:2,5,8 18:2,14 19:5,23 20:10 21:9,14,24 23:8,11,16 31:2,24 32:2 33:9,14 40:13 44:3 51:24 55:20,22
**challenge** 13:2 26:19 37:20,23 55:4
**challenging** 17:15
**change** 37:11
**chapter** 1:5
**characterize** 36:3
**charged** 35:19
**chart** 29:13,15 31:10
**charts** 29:12
**cheryl** 1:16
**choose** 29:5
**choses** 10:24
**circuit** 1:1,17
**circular** 26:6
**circumstance** 30:4 30:19 37:12
**circumstances** 11:1 12:19 26:22 37:15 37:16 39:11,24 45:21
**citation** 23:12
**cite** 22:19 23:9 31:9 52:7
**cited** 10:17 20:23 22:23 29:17 31:9 43:10,11

**cites** 36:15,24
**claim** 9:2,10 16:11 26:4,19 27:13 32:17 33:23,24
**claims** 5:22 7:22 8:3 8:6,23 9:11,15 10:10 19:16 26:4 27:13 28:1,4,18,18 29:21 33:2 41:7
**clarity** 23:13
**clark** 43:11
**class** 11:19 12:7,10 13:1,2,4,11,13,16,16 13:19 14:4,5 15:13 15:18,20,21 16:1,12 16:17,19 17:17 33:2 33:3,4,5 37:11,17 37:18,20,21 38:17 39:5 42:3,15 45:17 45:19 46:6,15 47:20 48:13 49:4 53:3,6,8 53:9,12,14,18 55:1 55:5,9,14 56:4
**clear** 8:5 17:18 21:9 22:3 23:22,23 26:17 27:2 35:1 46:8 50:25
**clearly** 9:8 10:15,17
**clients** 14:14
**clock** 47:4
**closely** 18:6
**cohen** 2:2
**colleague** 54:2
**colleagues** 5:7
**collection** 7:7 10:9 10:15,18
**come** 26:5,13 47:14
**comes** 23:2 25:23
**coming** 39:25
**comment** 19:15 30:1 30:3
**committed** 11:24
**common** 3:21,23 4:1 4:6,12,13,20,21,25 23:5 24:12 26:11

**community** 11:7,22 11:25 12:3 13:18 37:10,14
**company** 2:23 33:1
**competing** 29:13
**complaint** 18:23 32:7,7,22 33:19,20 34:1,9,17 35:7,9,23
**completely** 15:16
**complicated** 25:6
**concern** 8:4
**concerned** 7:20 8:7 15:18 28:12
**concerns** 28:11 49:14 54:25
**concluded** 56:5
**conclusion** 5:18 36:6
**conditional** 37:17
**conditioning** 37:19
**conflicting** 50:15
**connection** 46:2
**consideration** 6:5 6:23 7:6,13,14,15 8:25 9:12 19:3,12 20:1,7,8,19,23 21:2 21:6,19,21 22:5,10 22:16,17,20,21 23:1 23:2,7,17,25 24:1,9 24:14,19 25:15,17 26:22 27:25 28:14 28:25 29:19 30:5,6 30:12,20,21,21 31:1 31:3,9,19,23 50:5,9 50:16,16 51:9,16,19 52:4,9,11,15,18,23
**considered** 40:3
**considering** 24:23
**considers** 39:10
**consistency** 24:22
**consistent** 24:11
**consisting** 24:11
**constitutes** 4:5

**constitutional** 34:16 34:18 35:5,15 46:5
**contact** 44:25
**contained** 21:20
**containing** 33:4
**contemplate** 26:24
**contemplated** 31:19
**contended** 20:15
**contention** 48:8
**context** 17:17 52:5
**continue** 51:14
**contract** 6:6 20:7,9 21:4,5 22:5,6,10,20 23:6,25
**contracts** 3:17 4:2 6:18 7:8 20:4,6 51:9
**contractual** 7:2 8:14 21:1
**contrary** 23:10
**controversy** 18:10 18:11 36:10,17,21 36:23
**convey** 9:9 50:13 51:12 52:14
**convince** 38:13
**coordinated** 15:6
**corbin** 7:8
**corporation** 1:10,12 1:13 3:3
**correct** 4:7 15:2 36:15,21 57:4
**cost** 55:25
**counsel** 15:5,12,14 15:20,21 16:21 19:24 37:21 42:10 42:12,15,21 43:6,7 43:14,21 44:13 45:16 46:9,19 48:4 49:23 53:25 54:4 55:20,22 56:3
**counsel's** 15:10
**country** 4:11,13,16 5:2 10:22
**couple** 25:4 27:5 29:4 37:8 42:19,24

44:8
**course** 12:16 15:17
  26:6
**court** 1:1 2:23 3:22
  5:1,2,12,16,18,22
  6:14,16,17,20 7:4
  8:7 10:7,16 11:6,11
  11:13,23 12:3,10,23
  12:25 14:10 16:17
  17:3,10,15 18:3,6,9
  18:12,21 19:8 23:4
  25:19,21,22,25 26:3
  26:6 29:5 31:13
  35:2 36:4,15,15,20
  37:18 39:4,6,9,21
  40:2,8,18,21 41:16
  41:23,24 42:5,9
  43:3 44:1,10,12,24
  45:7,13,14,21 46:3
  46:8 47:2,8,12,23
  48:3 51:2,4,6,17
  54:3 55:13,18
**court's** 4:1,8 11:7
  12:2,4 17:13,19
  18:5 36:16 43:10
**courtroom** 1:3
**courts** 4:4,6,9 5:1,20
  6:3,22 7:4,10 8:10
  10:14 12:6 26:8
  27:10,16 40:22 41:5
  41:9 52:10,17
**covenants** 20:19
  21:19
**coverage** 19:21
**covers** 19:21
**creating** 7:20
**critical** 19:18 42:25
**curious** 19:23
**cut** 28:23 33:10
**cuts** 41:5

**d**

**d** 3:1 57:12
**daimler** 1:10 48:24

**damaged** 33:17
**damages** 16:7 18:1
  28:10
**date** 1:10 39:15,16
**dated** 57:8
**dawn** 57:3,11
**day** 45:18,20 46:15
  47:19
**days** 42:15 54:6
**dc** 2:4,7
**de** 39:2
**deadline** 37:12,21
  37:22
**deal** 31:24
**dealing** 26:15
**debt** 22:7,8,10
**decades** 5:10
**decide** 31:13 41:24
**decision** 15:7 40:5
  52:1,4
**decisively** 30:2
**declaration** 43:14
  45:10
**default** 28:14
**defaults** 21:3 23:3
**defect** 32:20
**defective** 21:3,6
  22:17,21 25:17
  32:12
**defects** 43:8 49:4
**defendant** 6:21
  14:10 16:8,10 19:9
  23:1 27:8,14
**defendants** 8:13
  13:1,3 16:8 17:14
  17:16 18:25 28:8
  33:7 43:4 44:2 45:6
  46:20 50:1 53:5,11
  53:13 54:10,20,25
  55:10
**defense** 7:12
**definition** 24:5
  25:10 29:22,25
  30:23 49:2 50:4

**delay** 38:9
**denied** 42:3
**depositions** 13:10
  48:7
**described** 25:1
**determination** 40:3
**determinative** 53:2
**determine** 3:23
  13:14 24:19 38:17
  51:11
**determined** 16:7
**determining** 3:25
  4:24 12:5
**different** 11:19 20:3
  32:16 37:24 42:23
  49:20 50:8
**difficult** 26:12
**direct** 5:24 7:18,20
  7:23 8:1,15 17:20
  17:25 18:25 28:5,16
  32:10 33:24 49:18
**directed** 7:4 10:7
**directly** 33:6
**disagreement** 26:16
**disappeared** 32:14
**disavows** 19:14,15
**discount** 48:25
**discovery** 16:6 19:2
  19:4 38:16,20,23,24
  39:1,5,8 40:10,23
  41:19 42:22 46:17
  46:21 47:16,17
  52:21 53:9,14
**discretion** 11:9,11
  12:21,23 38:4,6
  40:3,18 45:7 48:2
**discussed** 45:1
  46:24 52:8
**discussion** 44:24
**dismiss** 14:11 16:19
  36:10 47:3,7
**dismissed** 18:6,12
**dismissing** 17:19
**disposition** 36:14

**dispute** 7:11 8:11
  16:15 24:14 25:11
  25:16 52:15
**disputed** 19:1 44:23
**disputes** 6:6 25:21
**disputing** 44:3,7
**distill** 4:16
**distinction** 10:23
**distributed** 14:4
**district** 6:14,16,17
  11:6,23 16:17 18:3
  18:12,21 35:2 36:4
  36:14,15,20 39:4,6
  39:9,21 40:8,18,21
  40:21 41:9,23,24
  42:5,9 43:3,10,25
  44:10,12,24 45:7,13
  45:14,21 46:3,8
  47:2,8,12,22 48:3
  54:3
**docket** 40:18 41:23
**doubt** 36:2
**driving** 45:16
**due** 8:15 14:12
**duplicative** 12:8
  29:2 53:21
**duties** 13:19
**dynamics** 49:20

**e**

**e** 3:1,1
**earlier** 9:18 15:8
  41:20 42:23 43:24
**early** 48:13
**easily** 7:24 25:19
**eaton** 1:10 3:3
**efficiency** 17:16
**efficient** 15:17 24:15
**efforts** 52:21
**eight** 33:3,4,5
**either** 26:14 32:17
  55:7
**electronic** 57:4,12
**eminently** 36:20
  48:2

**emmy** 2:2
**ends** 40:6
**enforce** 11:6 26:19
**enforceable** 5:17 6:2
  7:12 16:16 24:21
  50:2,4 51:8 52:16
  52:24
**enforced** 51:23
**enforcement** 24:16
  24:25
**enforcing** 9:1
**engine** 1:13
**enter** 21:5 22:6 30:4
**entire** 53:25
**entirely** 25:24
**entities** 10:10
**entitled** 57:6
**equally** 28:23
**err** 17:10
**erred** 18:3
**error** 11:5,24 12:23
  38:3
**espousing** 24:11
**esq** 2:2,5
**esr** 2:8
**essence** 3:15
**estate** 1:6,7 49:19
**et** 1:8,13
**evaluate** 20:8 36:16
**evidence** 48:19,23
  51:14 54:23
**evolved** 4:14 7:7
**exact** 12:9 14:19
  30:18 42:3 55:7
**exactly** 22:14,24,25
  30:3 36:24 39:19
**examination** 24:18
**example** 43:16
**examples** 5:1
**excellent** 55:23
**exception** 7:18 24:3
  31:20
**exceptions** 7:20
**exchange** 10:11
  19:12 20:18 22:6,16

24:8 25:13 30:19
**excluded** 49:1
**exclusive** 32:9 34:19
**excuse** 7:15 14:7
  22:7
**executed** 19:19
**existence** 6:5 29:19
**exit** 16:4
**expect** 22:2
**expert** 48:17,19
**experts** 40:24
**explicit** 34:14,22
**explicitly** 7:8
**express** 5:17 8:5
  23:20,23 51:3,13
**expressed** 50:22
**expressly** 8:2 9:21
  19:14,15 37:19,24
  39:10
**extent** 41:7
**extinguished** 22:11
**extra** 33:9
**extraneous** 51:1

**f**

**face** 18:23 20:18,24
  21:13 25:9,13 35:6
  35:8 40:13 52:14
**fact** 9:4,12,19 10:16
  11:23 15:4 16:14
  18:20 31:18 32:9,9
  32:12,14,19 33:13
  33:21,23 34:7,7,11
  34:12 35:10,11,21
  41:3,5 42:21 48:11
  49:1,11 50:14 53:7
  53:11 54:1,5,16
**factors** 12:20,24
**facts** 11:19,25
**factual** 8:8,11 19:1,1
  51:14
**fail** 30:25
**failed** 11:6 23:7
**failing** 11:14

**fails** 31:23
**failure** 17:20
**falls** 19:20
**far** 42:5
**fashion** 46:12
**favor** 30:2
**february** 14:8
**federal** 3:21,23,25
  4:4,5,6,9,12,20,21
  4:25 5:14 24:12
  26:8,11 27:1,22
  28:9,15 29:6,9
  31:16
**feld** 2:6
**felt** 54:21
**file** 14:14,15 17:14
  40:20 41:3,8 43:23
  45:19,20 47:3 53:18
**filed** 14:7 41:2 42:1
  44:21 47:20 53:5
**filing** 12:7 14:1
  40:14 42:16,17
  54:10
**filings** 12:8 53:21
**finding** 39:24 42:9
**first** 7:5 9:17 10:20
  18:17 25:5 27:7
  37:9 38:15 41:22
  44:9,17,25 45:1,11
  46:1
**five** 3:8 9:7 14:18
  40:9
**floor** 1:3
**focus** 23:17
**focused** 23:12
**folks** 37:22
**follow** 12:15 40:19
**follows** 21:22 28:2
**footnote** 44:17,18
  45:4,12
**foregoing** 57:3
**forth** 11:20
**forward** 9:1 24:16
**found** 22:19 23:4

**fraudulent** 25:25
**freightliner** 1:11
**front** 43:25 44:11
  47:24
**fully** 43:3
**further** 54:17

**g**

**g** 3:1
**game** 14:3 44:5
**general** 4:13 5:19,23
  6:17 8:7 51:6,9,10
**getting** 5:20 6:4 8:10
  50:11
**gift** 7:11 19:19 20:1
  20:14,16,22 21:3,7
  21:11 22:12,13,15
  22:21 23:6,6 25:10
  25:14,18 28:15
  29:20 30:25
**gifts** 29:21
**give** 17:8 22:1,12,15
  29:11 34:17 55:24
**given** 21:10,25 24:7
  39:12 46:3,21
**gives** 35:14
**giving** 23:13,14,22
  23:24 33:9
**glasses** 22:2
**go** 5:5 9:16 13:24
  16:23 21:7 24:15
  29:2 49:13 54:16
  56:2
**goal** 8:21 24:25
**goals** 5:14 8:19
**goes** 48:21
**going** 3:6 6:24 7:17
  16:24 22:7 27:15
  33:10 37:2 38:20,23
  38:23 49:20
**good** 3:5 11:18
  29:20 48:15 49:12
**goodwill** 24:15
**governs** 3:21

grant  37:19

granted  3:9 37:18

gratuitous  3:12,14
6:1 10:25 19:22
20:14,22 23:4 24:3
24:4,6,7,20 25:8
26:25 27:4,24 29:22
30:7,11,15,22,24
31:4,7,10,15,22
50:2,5 52:2

greet  56:3

ground  39:9

guess  40:2

guidance  9:22

guided  8:20 12:6
26:23

gulfstream  5:16
7:16,25 8:4,12
23:11,19 26:3

gulfstream's  51:3,5

gump  2:5

**h**

h  30:1,3

hac  24:18

hampshire  2:6

hand  19:24

handful  52:6

happen  39:1 47:15

happened  40:23
52:8

happens  30:25
45:18

hard  22:23

harms  39:23

harris  43:10

hauer  2:5

head  21:4 27:20

hear  19:6

heard  39:7,22

hearing  46:15 47:21
48:9

heart  50:12

held  5:16 12:25

hey  44:2

hold  13:18 16:16

holdover  7:3

holds  6:1 10:17

honestly  55:6

honor  3:14 4:8 9:4
11:2 12:16 14:22
15:2 20:2 21:12
22:4 23:18 24:5
25:3,20 27:6 29:3
32:4 34:21 35:9,16
36:1 38:7,21 40:7
40:12,16 42:7,25
44:6 46:7 47:10,22
48:14 49:6

honorable  1:16,16
1:16

honors  49:24

hotly  44:23

huh  17:4 41:13

hundreds  4:14

**i**

identifies  34:4 47:6

identify  34:1,23

iii  17:23 18:11 32:19
34:20 35:3 36:3,5
36:11,13

illinois  8:21 17:25
25:2 27:1,18,20
28:11

illuminating  49:12

illusory  19:12

imagine  53:23

import  41:15

important  5:14
11:24 40:5

impose  39:5

improper  43:16

imputation  43:5,16
45:9,23

impute  15:10 42:12
43:9 49:3

imputed  42:22

imputing  49:6

inapposite  10:3

inappropriate  7:19

incentive  8:23 9:4
15:14

incentivize  12:7

include  10:23

included  5:22 8:9
10:3

including  5:2 33:5
41:16

inconclusive  10:1

inconvenienced
55:15

indicate  54:4

indicating  53:5

indication  8:24 9:4

indirect  7:23 17:22
28:1 33:21 34:2,8
35:12,17 48:21,25

indiscernible  42:4
46:9

inefficient  12:8
15:23 53:21

inexplicably  12:25

infer  15:5

inference  44:14
45:15,22

inferences  44:10

informs  16:2

injured  48:23 49:1

injury  17:23 32:8,9
32:13,19 33:13,17
33:21,23 34:6,7,10
34:12,18,20,24
35:10,18,20

inquiries  8:8

inquiry  25:5,11

instrument  51:12

insure  51:11

intend  51:14

intended  9:9 13:2
20:13,16,21 22:20
25:9,14 30:20,24
31:22 50:8,13 51:12

53:6 55:10

intent  26:17 27:3
50:22,25

intention  8:17 9:10
22:15 47:3

interest  14:25

international  1:12
1:12

interpret  9:24

interrogatories  13:4
13:8 48:5

intervene  11:4,16
12:9 14:25 40:17
41:20 42:18 46:11
47:5 49:10 53:10,18
54:6,13,13,15,21

intervenor  46:1

intervenors  11:15
14:3 15:4,10,11,13
16:2 41:18 42:11
43:1,14 44:1 45:17
45:20 46:20 49:5
54:8,14,16,24 55:9
55:13

intervention  12:1
15:22 16:5 32:3
37:1,3,8 43:4 49:8
53:1,2 54:18

intricate  5:23

invalid  19:2 28:6
32:18

invalidate  16:18
50:24 51:21

invested  9:1,14
40:10

investment  24:24

involvement  15:15

involves  29:16

involving  29:17

irregular  17:13

issue  5:10,15 11:3
14:12 16:11 17:17
18:3,16 19:11,18
23:19 31:14,18 43:2
52:6,25 53:2,16

54:9,21
**issues** 14:18 16:5
46:18,24 53:8

**j**

**ja** 20:17 21:13,16
32:7,22 39:6,10
**january** 14:7,9
43:22 46:14 47:9
54:9,15 55:11
**jjrs** 14:15 44:5
**joseph** 1:17
**judge** 3:2,5,9,18 4:3
4:18 5:4 6:8,24 7:16
8:16 9:16 10:24
11:8,17 12:13,14,17
13:6,21,22,23,24,25
14:6,13,20,23 15:3
15:24 16:21,22,23
16:24 17:1,2,5,8
18:2,14,15 19:5,23
20:10 21:9,14,24
22:1 23:8,11,16
24:10 26:15 28:22
31:2,24 32:2 33:9
33:14,25 34:13 35:4
35:11 37:2,5,25
38:5,8,12,19,22
39:14,18 40:4,9,13
41:11,14 42:14,17
42:20 44:3 45:25
47:1,8 48:11 49:3
49:23 50:7 51:24
53:22 54:11 55:2,20
55:22
**judges** 1:17
**judgment** 10:13
**june** 1:10 57:8
**jurisdictional** 17:5
18:4 31:25 32:6

**k**

**keep** 22:12
**kind** 10:8 19:23
24:22

**knew** 47:25
**knocked** 36:13
**know** 12:20 36:25
40:4 43:22 53:23
55:10
**knowledge** 15:10,14
42:12 49:4 54:25
**known** 45:13 48:5
**knows** 44:12,12,13
45:8 47:25
**krause** 1:16 4:3,18
5:4 6:24 8:16 9:16
14:20,23 15:3,24
16:21,23 17:1 18:15
24:10 26:15 28:22
33:25 34:13 35:4,11
40:9 41:11,14 42:14
42:17,20 45:25 47:1
47:8 48:11 49:3
50:7 53:22 54:11
55:2

**l**

**l** 2:2
**lack** 14:12 19:3 23:2
45:11
**language** 18:6,10
32:21 45:3 51:5
**law** 3:21,23 4:1,6,12
4:13,15,20,21,25
7:7 9:24 21:4 23:25
24:1,12 25:2 26:11
26:12 27:16,23 28:2
28:4,6,9,13 31:16,17
37:11 50:15 52:6,16
**lawsuit** 14:15 40:14
40:20 41:2,3,4,8,17
**lawyers** 44:2
**lead** 33:23
**leave** 14:11 17:14
**led** 17:12
**left** 22:1 37:21 41:12
45:21

**legal** 11:5,24 12:23
13:15 19:16 27:13
37:9 38:3 52:20
**lerman** 51:4
**letter** 14:10 17:3
43:22 45:1 47:6
52:16
**levens** 2:2 3:7,10,13
3:20 4:7,23 5:11
6:12 7:3,25 9:3 10:2
11:2,10,22 12:16,22
13:8 14:2,9,16,22
15:2,9 16:4 17:4,7
17:11 18:5,18 19:7
49:25 50:10 52:3
54:7,12 55:6,21
**liability** 28:8,10
**limit** 38:23
**limited** 37:16
**line** 4:19 5:13 6:2
**linehaul** 33:6
**lines** 13:14
**litigated** 9:7 43:2
**litigation** 13:20 29:2
40:10 45:16,17
**little** 17:13
**llc** 1:11,11
**long** 27:2 48:20
**longer** 10:15,20
16:10 36:7,8,9
48:18
**look** 5:12 6:8,9,24
7:5 8:16 9:18 10:6
12:20 18:5 20:17
24:5 26:11,25 29:15
43:20 44:2 45:3
47:25 49:8
**looked** 22:23
**looking** 5:9 8:18
**lot** 27:16 39:18
47:15 52:6 55:24
**lots** 27:10 40:22
**lower** 6:3 8:10 11:11
11:13 17:10

**m**

**magnitude** 39:23
**main** 11:21
**majority** 4:10,16
6:22 10:22,25 20:6
29:13
**making** 48:20
**manage** 40:18 41:10
**managing** 39:22
41:23
**manifest** 8:17
**manifestation** 27:2
**maps** 29:9
**march** 46:15,16
48:9,12,13
**maris** 1:3
**mark** 1:5
**market** 2:24
**marketplace** 35:14
**material** 39:7,13
40:1
**materials** 13:17
**matter** 19:1 26:13
26:21 27:22 29:6
36:13 37:11 57:6
**mean** 4:4 7:4 11:18
19:24 21:7,10,25
22:9,11 28:23 40:20
41:24 48:12 52:10
**means** 15:1 21:7
22:9 48:2
**meant** 22:12 25:15
**meet** 27:24 29:22
**meeting** 50:18
**members** 12:7,10
13:1,5,11,13,17,19
15:13,18 16:17
37:20 53:3,10,18
55:10,14
**mention** 44:15,16
**mentions** 44:25
**mere** 15:20 53:7
**merely** 10:21

**met** 46:23
**michael** 1:16
**mid** 2:23
**milstein** 2:2
**minds** 50:18
**minimis** 39:2
**minimize** 52:21
  53:21
**minority** 16:18
  51:18
**minutes** 3:8 33:15
**mistake** 12:21
**mom** 22:8
**month** 37:21
**morning** 3:5
**motion** 11:16 14:1,6
  14:7 15:21 17:14
  42:17 43:5 45:19
  46:6 47:3,7 53:18
**motions** 11:4 12:1,8
  39:17 45:20 49:8
  54:6,12,13
**move** 14:11 16:24
**moving** 9:1
**multiple** 28:7,10
**mutual** 20:19 21:19

**n**

**n** 3:1
**n.w.** 2:3,7
**named** 36:8,17,19
**narrow** 24:2
**national** 2:23
**nature** 27:12
**navistar** 1:11
**necessarily** 4:23 9:3
**necessary** 51:10
**need** 6:3 14:25
  18:16 24:1 28:14
  39:9 41:20 47:5
  53:10 54:4,21
**needed** 34:14
**needs** 24:24
**negate** 35:5

**never** 20:20 25:13
  25:22 27:7,14 31:7
  34:5 35:22 44:19,25
  46:21,23,23 49:9
  51:25 52:3
**new** 2:3,6 38:17
  39:5 40:14,20 41:2
  41:4,8,17,25 45:23
  46:22 47:14
**newly** 43:17
**non** 7:2
**normal** 23:25 24:1
  28:13
**normally** 29:20
**north** 1:11
**notably** 8:12 51:2
**noted** 5:18 7:9 8:1
  52:10
**noteworthy** 51:17
**notice** 11:20 12:11
  13:1,20,25 14:4,24
  16:17 41:18,20 42:8
  43:7 46:9,10 53:10
  54:9 55:4
**november** 13:7,9
  43:9 46:10,14 48:8
**nyugen** 4:8,18

**o**

**o** 3:1
**object** 44:2
**objection** 32:5
**obligation** 30:11,16
  52:20
**obligor** 7:13
**observe** 4:19
**obviates** 6:3
**obvious** 27:14
**obviously** 32:22
  43:7 48:19
**occasion** 51:2
**occur** 39:9
**occurred** 9:5
**occurs** 55:8

**october** 13:6,9
**offensive** 38:20,24
**offered** 19:12 40:25
**official** 57:4
**oftentimes** 5:19
  10:11 50:14,16
**oh** 23:3 33:12 49:9
**ohio** 28:2,4,6,9
**okay** 18:14 19:5
  20:12 21:16 27:5
  33:12 37:4,7 38:2
  38:11 41:21
**old** 5:10
**omitted** 9:20
**opening** 44:16
**operator** 2:8
**opinion** 4:11 10:22
  36:6 43:11
**opposite** 29:1
**opposition** 43:4
**opt** 37:12,22
**oral** 55:23
**order** 5:23 17:19
  19:4 25:7 55:25
**organization** 10:10
**ostensibly** 30:5
**outlined** 27:1
**outside** 19:21 31:19
**overcharge** 16:7,9
  34:5,6,8 35:19
**overcharged** 35:24
**overcharges** 33:22
**owe** 22:7

**p**

**p** 3:1
**pa** 2:24
**page** 22:24 39:10
**pages** 29:18
**paid** 22:8
**paper** 25:24
**papers** 45:8
**paragraph** 21:24
  22:2 32:8,22 34:11
  34:23,24

**part** 15:6 24:12
  41:22 42:7 48:18
**partial** 30:10
**particularly** 5:9
  41:17
**parties** 7:5 8:17 9:13
  9:18 10:7 14:24
  17:21 18:18 19:4
  21:21 24:13 25:12
  27:3 29:1 30:4 34:3
  36:18 39:6 44:12
  45:8 47:5,25 50:12
  50:23,24,25 51:11
  51:14,19 53:24
  55:25
**party** 26:19 36:19
  42:23 47:2,14
**pass** 35:24
**passed** 34:9 35:18
**pause** 3:4
**penalize** 45:6
**people** 8:23 24:23
  29:20
**perfect** 23:22
**performance** 1:6
  24:8
**period** 33:3 37:6
  53:25
**permanent** 22:3
**ph** 56:2
**philadelphia** 2:24
**picking** 41:11
**piece** 25:24
**pipe** 12:4 13:18
  14:17 53:20
**place** 4:1,24 5:5,12
  36:5 42:6
**plaintiff** 18:8 23:2
  25:23 28:8,9 33:17
  36:7,8,13,23 49:16
**plaintiff's** 8:14
**plaintiffs** 20:20 26:5
  27:22 32:25 42:11
  42:12 43:6,7,13,21
  45:16 46:9,19 48:14

49:17
pleading 43:20
please 19:8
plenty 41:9 49:14
point 6:15 15:11,25
   18:20 19:18 20:21
   22:25 32:21,23 37:1
   37:22 39:21 41:15
   45:2 47:5 50:7
   51:25
points 44:8
policies 27:1
policy 8:18 12:1
portion 10:12 27:18
posit 31:17
posited 48:6
positing 25:6 32:13
position 5:13 9:25
   16:18 17:9 18:2
   51:18
positioned 41:24
posits 32:8
possibility 31:15
possible 47:19
post 24:17
postponed 46:3 47:9
potential 43:8 47:14
pratik 2:5 19:9
precedent 4:8 11:7
precisely 39:23 45:5
precluded 47:11,13
predicated 49:7
predicating 35:25
predictability 24:22
predictable 24:12
preexisting 30:11,16
   43:17 45:11 46:18
prejudice 38:9,15
   39:13 40:1
prejudiced 41:7
   55:15
premature 43:23
premised 34:19
present 27:12 47:18
   52:9

preserve 53:19
presumption 11:15
   14:19,20 37:9,13,15
   53:23
pretty 22:3,23 40:5
prevail 14:13
prevent 8:1
previous 7:4
price 8:9 35:20
primary 31:6 43:4
   45:9
problems 12:18
   13:15
procedure 17:12
proceed 40:25 41:9
proceeded 19:2
   26:18
proceeding 24:15
   28:8,9 39:22
proceedings 47:24
   56:5 57:5
promise 24:8
promisee 50:19
promisor 50:20
promulgate 24:25
proper 48:1
properly 35:2
proposed 11:14 14:3
   15:10,11,12 54:8,13
   54:16,24 55:1,9,13
proposition 50:11
propounded 13:4,9
propriety 47:17
prosecute 8:23 9:5
prospect 40:14
protect 14:25
provide 43:12 52:20
provision 6:17,19
   7:5 10:3 24:20
proxy 50:17
prudential 36:16,24
publicly 53:5
purchase 7:21 8:9
purchased 16:9 33:3

purchaser 5:24 7:18
   8:2,3,15 17:20,22
   17:25 18:25 28:1,5
   28:16 33:21,24 34:2
   34:8 35:12,17 49:18
purchasers 7:23,23
   16:8 48:22,24,25
purchases 32:11
   33:17 48:20 53:15
pure 38:3
purports 52:14
purpose 4:14 53:20
purposes 17:16,23
   27:20 28:19
pursue 18:8 54:19
pursuing 9:10,14
put 32:16 33:14
   41:19 48:7 53:9
putative 12:10
   13:16
putting 36:22
pyramid 35:14

q

qualify 52:23
quarterbacking
   48:4
question 17:24
   23:24 25:17 26:12
   27:19 35:3 42:8
   44:19 46:4 48:21
   50:22,23 52:17 53:4
   53:6
questions 5:24 13:3
   13:15 26:1 27:11,17
   28:11 41:25 42:4
   48:16 55:19
quickly 52:25
quite 7:9,10 49:12
quo 21:8
quote 7:17

r

r 3:1
r&r 9:9 28:3,17
   32:10,17 33:2 34:25

52:20,22
raise 18:18 51:20
   55:10
raised 18:16,21
   44:24 53:8 54:20
rationales 8:19 12:1
reaching 5:18
react 51:24
read 7:17 13:14
   32:23
reading 35:6
real 39:13
really 11:18 23:12
   30:6,21 41:4 50:11
   55:11
reason 10:5 12:9,25
   14:19 29:20 32:6
   33:18 36:9 41:1
   43:22 46:20 48:16
   48:17 50:14 53:3
   54:15 55:3,8,16,18
reasonable 16:16
   42:9 44:14 45:15,22
   48:3
reasonableness 16:2
reasonably 42:12
reasons 19:13 27:14
   49:13
rebut 15:1
rebuttal 19:6 49:25
rebutted 14:21
   53:24
receive 10:12 12:11
   13:20
received 9:6 32:10
   48:24
recognized 7:8 18:9
   31:8 51:6
record 9:8 40:24
   42:3,14 43:25 44:9
   44:11 54:3,7,23
   56:3
recording 57:5
redo 55:15

**reference** 9:17
**reflection** 4:12
  10:22
**regard** 3:24
**region** 2:23
**regular** 20:3,5,7
  21:1 22:19
**rejected** 8:12 10:14
  23:5 51:4
**relate** 7:1
**related** 6:18,19 12:5
  47:17 53:8
**relates** 10:8 53:15
**relationship** 34:2
  35:13 43:13,18
  44:13 45:11 46:18
  46:23
**relative** 39:4
**relied** 6:16 12:3
**relitigating** 14:18
**rely** 21:23 48:15
  49:2 50:11 54:4
**relying** 11:21 24:17
  49:21
**remember** 55:6
**remote** 8:3
**render** 15:21
**rendering** 52:24
**reopen** 38:16
**reply** 10:17 43:12,15
  43:20 44:18 45:12
  45:19 47:20
**reporting** 2:23
**representation** 4:10
  44:4,7
**representations**
  46:22
**representative** 16:1
  16:12,19 38:18
  48:13 49:5
**representatives** 13:3
  13:16 53:7,8,14
  55:1,5
**represented** 15:5
  42:10 43:6 53:24

54:5
**repudiated** 9:21
**request** 41:19
**requested** 17:14,16
**requesting** 14:11
**require** 6:23 14:18
  34:18 51:5,19 53:17
**required** 7:6 19:3
  51:7 52:4,11 54:18
**requirement** 51:1,3
  51:11
**requirements** 40:17
**requires** 3:23
**requiring** 9:12
  28:24,25 51:15
**reserve** 3:7
**reserving** 3:6
**resolved** 7:11 25:19
**resolves** 30:2
**response** 29:11 46:3
**responses** 25:4 27:6
  29:4 37:8 42:24
**rest** 5:6
**restatement** 3:17,19
  3:20 4:2,10,15 5:4
  5:10,11 6:9,13,15
  7:6 8:20 9:17,20
  10:4,20,21 19:10,14
  20:5 24:20 26:24
  30:22 50:3
**restatement's** 5:13
  5:25
**restatements** 4:19
  4:21
**restrictions** 10:19
**result** 15:23 29:10
  33:8,16 34:6 55:7
**retain** 15:19
**retained** 15:11
  42:15 43:17 44:4,21
  45:4 54:5
**retaining** 15:20
**retention** 45:1
**retroactively** 42:22

**return** 24:8
**reverse** 55:19
**review** 11:9
**right** 6:9 11:9 12:13
  20:12,14 21:14 31:5
  33:10 36:24
**rights** 7:2 15:19
  25:1 53:4,19
**rise** 34:17
**risk** 28:7,10 42:6
**road** 49:14
**role** 34:1
**rule** 5:23 7:19,21,21
  10:16,25 12:2,5
  22:22 23:5 24:10
  26:8,10 27:21,22
  28:3,13,14,20,21
  29:7,8,9,9,14,14
  31:2 42:21 46:11
  51:6 52:11 53:20
**ruled** 12:5
**rules** 9:23 12:5 20:7
**ruling** 17:13
**running** 47:5

**s**

**s** 1:5 3:1
**satisfaction** 30:10
**satisfied** 27:4
**save** 19:10 41:16,23
**saw** 42:2
**saying** 31:12 36:21
  47:13
**says** 20:18 21:17
  23:3 24:7 25:10
  28:14 30:3,8 32:24
  33:12 36:7,16 39:10
  43:21 44:20 45:4
  47:12 52:1
**schedule** 47:24
**scheduled** 46:16
**scheme** 5:14
**scirica** 1:17 3:18 6:8
  10:24 11:8,17 12:14
  12:17 13:6,21,23,25

14:6 22:1 37:2,5,25
  38:5,8,12,19,22
  39:14,18 40:4 49:23
**scope** 23:21 29:25
  31:19
**scratch** 40:21
**sea** 37:10
**second** 4:2 9:20 10:4
  10:21 40:2 49:4,7
**section** 6:9,13,16
  9:18 10:6,6 19:10
  19:14,20,21 24:3,6
  30:1,1,13
**sections** 6:10
**security** 30:9
**see** 8:22 9:23 12:12
  25:8 38:8,9 40:1
**seek** 46:21 53:13
**seen** 6:7
**sense** 22:22 23:5,23
  40:15 45:6 46:2
**sent** 17:3
**sentence** 30:14
**separate** 15:14
  33:23
**serious** 41:25 42:4
  48:16
**served** 28:20 42:22
**services** 1:7
**set** 37:12 47:24
**setting** 12:22
**shah** 2:5 19:8,9 20:2
  20:12 21:12,16 22:4
  23:9,15,18 25:3
  27:5 29:3 31:5 32:1
  32:4 33:12,16 34:4
  34:21 35:8,16 37:4
  37:7 38:2,7,11,14
  38:21,25 39:16,19
  40:7,12,16 41:13,21
  42:16,19,24 44:6
  46:7 47:6,10 48:14
  49:6,24 54:2
**sherman** 18:1

**shoes** 47:15

**short** 37:6

**show** 29:12 43:1
44:1

**showed** 48:20,23

**showing** 45:17

**shows** 9:8

**side** 5:8 56:3

**sides** 38:15 39:7

**signed** 45:2

**significant** 16:6

**significantly** 11:19
55:14

**similarly** 1:8 5:25

**simple** 50:1

**simply** 4:4,18 5:5
6:16 8:20 10:1
25:25 26:6 29:6

**single** 23:9 26:10
29:16 31:10 53:11

**situated** 1:8

**situation** 11:5 18:22
22:14 37:24 41:10
53:23

**skipping** 30:14

**sole** 32:13 33:13
34:10,23 36:19

**solely** 49:8

**sorry** 13:23 38:21

**sort** 41:10

**sorts** 26:4 27:17
28:11

**sound** 57:5

**source** 4:21,24
44:23

**south** 57:3,11

**speak** 30:18

**speaks** 30:3 49:20
49:21

**special** 37:14,16
51:5,7

**specific** 6:10,13,18
6:25 7:1 21:25 55:8

**specifically** 10:8

**speed** 15:16

**split** 55:25

**sponte** 18:21

**sprint** 10:16

**squarely** 48:7

**standard** 11:8,12,14

**standing** 8:15 14:12
17:1,6,10,12,15,20
18:4,7,13,16,20,24
26:20 31:25 32:5,15
34:14,16,19,22 35:6
35:15 36:4,6,14,22
43:8 46:5,5 51:20
55:4

**standings** 18:19

**start** 20:13,16 40:21

**starting** 4:1,24 5:5
5:12 6:15 26:23

**state** 5:9 6:22 7:17
26:11 28:16 29:6,8
29:13 31:17 54:14

**statement** 54:24
55:2

**states** 1:1,17 5:3
28:24,25 33:7 51:18

**status** 21:8

**statutory** 5:14 17:6
17:9,11,15 18:7,13
18:16,19,20,23
26:20 31:25 34:14
36:4,14 46:4

**step** 5:8 47:14 54:17

**straightforward** 6:2
10:4 11:4 31:13

**strategic** 15:7 45:18

**strauss** 2:5

**street** 2:24

**strongest** 11:23
12:24

**stuff** 40:24

**sua** 18:21

**submission** 31:6

**submitted** 14:10

**subsidiary** 26:1

**suddenly** 21:3

**sue** 18:1

**suffer** 16:9

**suffered** 17:23 34:5
35:18,20

**sufficiency** 6:5
24:18 52:17

**sufficient** 52:23
53:17

**suggest** 7:22 9:24
14:21

**suggested** 13:15
25:22

**suggesting** 47:1

**suggestion** 5:7

**suggests** 41:6 42:14

**suit** 8:13 35:25
40:24 41:25 47:18
49:16

**suitability** 38:17
39:1

**suite** 2:3,7,24

**supersede** 35:5

**supported** 19:25
31:3

**supportive** 9:25

**supposed** 22:15

**supreme** 5:2 10:16
12:4,9

**sure** 22:4 23:15 25:3
25:20 29:3 32:1,4
34:15 39:19 40:12
44:19 47:10

**surrounding** 11:25

**survey** 4:15 5:9 6:22

**sustained** 33:17

**t**

**take** 4:22 6:25 9:19
38:14,20,23 40:22
41:14,21 56:1

**taken** 5:7 24:8

**takes** 31:19

**talking** 34:15 41:17

**talks** 36:5

**tauro** 9:6 15:4 16:12
16:19 17:19,22
18:23 28:1 32:7,25
52:19 54:18

**tauro's** 17:15

**tell** 12:18

**term** 50:16

**terms** 9:22 11:19
27:24 34:2 45:25
51:5,7

**testimony** 9:8

**thank** 3:10 19:5,7
33:15 37:7 49:23,24
55:20,21,22

**theoretical** 31:15

**theory** 43:5

**thing** 31:6 48:3

**things** 24:15 47:15
47:17

**think** 19:17 20:2
25:5 27:19 28:19
30:2 31:5 35:1 36:2
39:17 41:22,25 42:4
42:5,25 48:1,2,15
49:12,19 52:22
55:24

**third** 1:1 8:20 24:25
26:19 50:23 51:19

**thoughtful** 15:7

**threat** 40:20

**three** 46:16 47:20
48:9

**time** 3:6 7:10 10:14
12:11,12 15:8,25
18:17 33:10 36:25
37:5,6 39:17,18
45:18 46:17 48:20
54:22

**timeliness** 11:15
12:24 37:13 40:17
43:2

**timely** 46:11

**timing** 16:3 46:1

**toledo**  14:14 44:5
**tolled**  12:10 14:17
**tools**  40:22 41:9
**total**  30:10
**totality**  12:19
**tough**  28:10
**tower**  2:3
**trade**  10:11
**traditional**  28:3,21
**transcriber**  57:12
**transcript**  55:25
   57:4
**transfer**  7:2
**transfers**  5:19
**transmissions**  33:3
   33:5,6
**transpired**  39:12,25
**transportation**  1:6
**treating**  18:3
**trial**  39:14,16
**truck**  1:12
**trucking**  9:9 33:1
**trucks**  1:11 33:4
   48:24
**true**  23:18 36:12
   44:20
**truly**  9:14
**trustee**  1:5 49:15,18
**truth**  52:5
**trying**  12:6,6 50:17
**turn**  4:9 6:6 21:4,13
   22:1 27:20 38:14
**turned**  6:17
**turning**  11:3 52:25
**turns**  21:2,6 22:8,16
   30:5,20 32:18 48:23
**two**  3:15 19:13 20:3
   20:25 33:14 37:21
   49:17 50:25
**type**  10:9

**u**

**uh**  17:4 41:13
**ultimate**  10:13

**uncertainty**  29:24
**unclear**  8:10
**underlying**  12:2
**undermine**  8:14
   9:13 50:24 53:19
**understand**  29:12
   50:17
**understandably**
   53:13
**undisputed**  17:21
**undisputedly**  31:18
**unenforceable**
   30:17 31:4
**uniform**  24:11
**uniformity**  28:15
**united**  1:1,17 5:3
   33:7
**unknown**  2:8
**unprecedented**
   37:10
**unquestioned**  52:19
**unreasonable**  38:10
**unrelated**  16:5,11
**untimely**  15:22
**use**  51:5

**v**

**valid**  6:23 10:20
   20:9 22:10 27:25
   30:6,21 31:3 32:13
**validity**  3:21 26:2
   48:6
**vast**  20:6
**vehicles**  32:11
**veritext**  2:23
**versus**  3:3 17:6
   31:25
**viewed**  35:2
**vigorously**  9:6 26:18
**violations**  33:18
**vs**  1:9

**w**

**wade**  31:14
**wait**  23:3

**waited**  47:19
**waiting**  46:13,14
   48:8
**wallace**  1:5
**wallach**  3:3 15:25
   16:6,9 48:12,16,18
   49:1,10,14
**wallach's**  16:4
**want**  5:20 8:10,22
   24:23 26:1 36:3
   49:13
**wants**  47:14
**washington**  2:4,7
**way**  26:13,14 28:23
   31:13 32:16 35:5,17
   41:6 55:7
**we've**  22:23,23 25:1
**weeks**  44:21 45:4
   46:16,24 47:21 48:9
**weigh**  25:22
**west**  2:3
**whatsoever**  9:10
   13:19
**wholly**  19:12 45:23
**wield**  8:13
**worded**  44:20
**wording**  55:7
**words**  23:14 31:21
**worth**  52:22
**writing**  27:3
**written**  6:1 25:24
   50:21 51:13 55:23
**wrong**  3:11,13 5:6
   6:16 11:11,14

**y**

**yeah**  12:13,14 21:15
**year**  39:17
**years**  4:14 9:7 14:18
   40:9 42:23
**york**  2:3

## LIAISON COUNSEL'S CERTIFICATION OF ACCURACY

As liaison counsel for the purpose of coordinating the production of the attached transcript, I hereby certify, on behalf of all parties, that the attached transcript is accurate.

s/Matthew A. Scarola
_____

Matthew A. Scarola
AKIN GUMP STRAUSS
   HAUER & FELD LLP
580 California Street, Suite 1500
San Francisco, CA 94107
415-765-9507
mscarola@akingump.com

*Counsel for Daimler Trucks North America LLC and Freightliner LLC*

June 15, 2016

## CERTIFICATE OF SERVICE

I hereby certify that, on June 15, 2016, I served the foregoing transcript upon all counsel of record by filing a copy of the document with the Clerk through the Court's electronic docketing system.

s/Matthew A. Scarola
_____
Matthew A. Scarola
AKIN GUMP STRAUSS
   HAUER & FELD LLP
580 California Street, Suite 1500
San Francisco, CA 94107
415-765-9507
mscarola@akingump.com

*Counsel for Daimler Trucks North America LLC and Freightliner LLC*